**Wytheville.**

EDWARDS v. WALL.

August 14, 1884.

1. MORTGAGE—*Absolute Conveyance.*—Conveyance of land, absolute on its face, may, in equity, be shown by extrinsic and parol evidence to be a mortgage as between the original parties and those deriving title under grantee, who are not *bona fide* purchasers for value without notice. *Snavely* v. *Pickle*, 29 Gratt. 27.

2. IDEM—*Qualifications of Rule.*—But the proofs must be clear, cogent, and consistent, convincing the mind that an absolute conveyance was not intended. The fact that, though grantor was to retain possession, there was no time appointed to pay principal, nor any stipulation to pay interest, nor any note or security taken for the debt connected with the absolute form of the deed, may suffice to show that no mortgage was intended. *Ransone* v. *Frayser*, 10 Leigh 621.

3. IDEM—*Idem—Retention of Possession—Inadequacy of Price.*—Grantor so retaining possession, and price being inadequate, are only circumstances to be weighed along with other circumstances in determining the character of the conveyance.

Appeal from decree of circuit court of Carroll county, entered April 26th, 1881, in cause wherein the appellant was plaintiff, and E. R. Wall was defendant. By deed dated January 29th, 1876, Edwards conveyed land to Wall. On its face the conveyance was absolute. Edwards had been indebted to Richard Farmer in the sum of $135, with interest, and to secure payment thereof had executed a mortgage on the same land, which, in consideration of Wall's promise to pay said debt, Edwards that day conveyed to Wall. A part of said land Wall

afterwards sold and paid Farmer's debt. Edwards brought his bill, alleging that his conveyance to Wall was intended only as a mortgage to secure Wall for paying said debt, and praying that Wall be required to account for the excess of the proceeds of the part sold by him over Farmer's debt, and to reconvey to Edwards the unsold land. Wall answered, denying that the conveyance was intended as a mortgage. Numerous depositions on each side were taken. The evidence was inconsistent and obscure. The circuit court sustained the defendant's view and dismissed the plaintiff's bill. From that decree Edwards obtained an appeal to this court.

*Robert Crockett,* for the appellant.

*Hale & Brown,* for the appellee.

Lewis, P., after stating the case, delivered the opinion of the court:

It is well settled that a conveyance of land, absolute on its face, may be shown in equity by extrinsic and parol evidence to be, in reality, a mortgage as between the original parties and those deriving title under the grantee, who are not *bona fide* purchasers for value and without notice. But the presumption, of course, always is that the deed is what on its face it purports to be, and to repel this presumption the evidence must be clear, unequivocal, and convincing. 3 Pom. Eq. 175, § 1196; *Phelps* v. *Seely,* 22 Gratt. 573; *Snavely* v. *Pickle, et als.,* 29 *Id.* 27, and cases cited. In *Franklin* v. *Roberts,* 2 Iredell Eq. 560, Ruffin, C. J., said: "When the answer denies the right of redemption the proofs must be clear, consistent, and cogent, composed of circumstances incompatible with the idea of an absolute purchase, and leaving no doubt on the mind." Such is not the character of the evidence relied on in this case. In the first place, no personal security was taken for the alleged loan,

nor was there any agreement between the parties either as to the payment of interest or the repayment of the principal; and these are important circumstances in determining whether a mortgage or sale was intended. *Ransone* v. *Frayser's Ex'ors,* 10 Leigh, 621. The appellant was himself examined as a witness, but his statements are vague and contradictory throughout. He first testifies, in general terms, that the deed was intended as a mortgage, but, upon cross-examination, admits that after its execution and prior to the institution of the suit, he claimed to be entitled to nothing more than a home on the land free of rent. Other witnesses were examined in his behalf, and their testimony is equally·unsatisfactory. None of them prove any agreement between the parties as to the character of the deed, but testify chiefly to naked declarations of the defendant after the deed was executed, admitting the plaintiff's right to redeem. But these admissions, as detailed, are vague, and by no means consistent. Such testimony is justly regarded as entitled to little weight in opposition to the terms of a solemn deed. *Botsford* v. *Burr,* 2 Johns. Ch. 405 ; *Phelps* v. *Seely, et als.* (*supra*), and cases cited.

On the other hand, in addition to the responsive averments of the answer, the testimony for the defendant clearly shows that no such understanding between the parties, as is alleged in the bill, was asserted at the time the deed was executed and acknowledged.

The notary, who went to the plaintiff's house and took the acknowledgement, testifies that before the deed was acknowledged, it was read to the plaintiff (who was himself unable to read) by one of the persons present at the time, and that he did the same. He further says: " I think Mr. Edwards (the plaintiff) then requested me to walk out with him, and after we got out, he asked me if the deed would take all his rights from him, and I replied, it would, that it conveyed away all his right and title to the land. I told him, while we were out, that it was certainly a very plain deed, conveying away the land with all

rights, title and privileges therein. We then came back into the house, and he rather objected to signing the deed in that shape, and made some request of Mr. Wall (the defendant) to change the deed by putting in some provision, or something by which he (Edwards) would have some hold on the land. Mr. Wall then remarked to him that he would not put any provision in the deed, and that if he would not sign it as it was written, that he could let it alone; that he (Wall) would not touch it in any other shape. Then Mr. Edwards and wife signed and acknowledged the deed." And in reply to a question, whether anything, at that time, was said from which it could have been understood that the deed was a mortgage, or any kind of security, or in any way conditional—the witness said: "Nothing of that sort was said in my presence, and we were all together, except while Edwards and myself were out, as before stated, and while the others were out during the privy examination of Mrs. Edwards."

These statements as to what was said and took place in the house, are fully corroborated by the witness, A. H. Mitchell, who was present at the time, and who further says: "The price for the land was understood at the time. The amount of the Farmer debt had been calculated, as specified in the deed, and this amount was understood, between Wall and Edwards, to be the price for the land." And in reply to other questions, the witness said: "I have had several conversations with Edwards about the land since the deed was executed, and he never set up any claim to the land, to my knowledge, until about the time this suit was brought." Mrs. Ellen R. Crawford, a daughter of the plaintiff, and who also was present when the deed was executed, gives a similar account of what then took place. And when asked to state anything she may have heard her father say about the conveyance of the land, before or soon after the execution of the deed, she replied: "He said if Wall did not take the land and pay off the Farmer debt it would have to go. I have heard my father also say that he would rather Wall

would have the land than for Farmer's heirs to get it." And she further said: "I never heard him claim the deed to be a mortgage until some time in January, 1880," four years after it was executed, and about the time this suit was brought. Alexander Farmer, another witness for the defendant, testifies that from conversations with Edwards after he had executed the deed, he understood that Edwards had let Wall have the land, but that he was to have a home on it for his life-time. To other witnesses, who were examined, he made similar statements.

The appellee claims, and so stated to the appellant when the deed was executed, that he wanted the land as a home for his mother and half sister, who were respectively the wife and daughter of the appellant, and who afterwards left the appellant and were maintained by the appellee.

Under these circumstances, therefore, the appellant's continuing in the possession of the land until a portion of it was sold, and for sometime afterwards of the residue, cannot be regarded as inconsistent with an absolute conveyance thereof to the appellee.

Nor is the fact of the inadequacy of the price for which the land was sold entitled to much weight in support of the appellant's contention. The sale was substantially for cash, and the price was but little less than the assessed value of the land. But conceding that it was less than its real value, that circumstance cannot avail in view of all the testimony in the cause tending to show that a mortgage was not intended. How far the appellant may have been influenced, if at all, in the transaction by the fact that the appellee desired the land as a home for his mother and sister, which implied a home for the appellant also, so long at least as they should live together, is not shown by the testimony; but it is reasonable to suppose that it was not without its influence. And this may account for his declarations to several of the witnesses that he was entitled to a home on the land and a maintenance for life. If such was in fact the understanding between the parties, while it does not

appear by the evidence in this case, the appellant is not precluded from asserting the claim in another suit, if he shall be advised to do so. The only issue raised in this suit is, whether the deed of January 29th, 1876, was intended as a mortgage, and as the evidence is insufficient to show that it was, the decree is affirmed.

DECREE AFFIRMED.