## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

DOYLE'S ADMINISTRATOR AND OTHERS v. BEASLEY AND OTHERS.

JUNE 20, 1901.

Absent, Keith, P.

1. CHANCERY PRACTICE—*Laches*—*Presumption of Payment.*—The pre-
sumption, arising out of the lapse of time, the conduct of the parties
interested, and the circumstances surrounding them, that the debt
asserted in this cause, which has been past due over twenty-two
years, has long since been paid seems irresistible. Certainly, any
other conclusion would, at best, be purely conjectural.

Appeal from a decree of the Circuit Court of Culpeper
county, pronounced March 30, 1900, in a suit in chancery,
wherein the appellees were the complainants, and the appellants
were the defendants.

*Reversed.*

The opinion states the case.

*Barbour & Rixey*, for the appellants.

*Grimsley & Miller* and *G. D. Gray*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

Thomas Beasley died in the year 1853 possessed of several
hundred acres of land situated in Culpeper county, and leaving
a widow and seven children, among others Lemuel Beasley and
Thomas W. Beasley. By his will, probated in March, 1853,
Thomas Beasley left all of his property to his wife for life, with

remainder to all of his children, but by a codicil thereto he provided:

"I desire it to be understood that that portion of my estate which I have given in the will above to my son, Thomas W. Beasley, I now give to his wife, Anne Beasley, and children. Should he die without issue, I then desire his portion to be equally divided between the brothers and sisters of said Thomas W. Beasley who may be living at the time."

On the 1st day of September, 1859, Anne E. Beasley, the wife of Thomas W. Beasley, contracted with one W. M. Simms to purchase about six acres of land within a short distance of the Thomas Beasley estate, and for the purchase price executed to him her bond for $250, with interest, payable April 1, 1860, with Lemuel Beasley as her surety. This bond was assigned by Simms to F. M. Latham, September 5, 1859, who in turn assigned it to John M. Herndon, November 3, 1860, and Anne E. Beasley and her husband took possession of the property, built a small house thereon, and continued to live there until the death of her husband, Thomas W. Beasley, in 1897, without ever having received a deed for the land.

At September rules, 1869, for the Circuit Court of Culpeper county, Lemuel Beasley filed his bill against the other devisees of Thomas Beasley for the sale or partition of the real estate left by Thomas Beasley. Commissioners appointed by the court to partition the land, filed their report June 15, 1871, which was confirmed by decree at the November term, 1871, and in this partition 31½ acres of the land was allotted to Thomas W. Beasley, which was the portion to which Anne E. Beasley, his wife, was in fact entitled under the will of Thomas Beasley, and 26½ acres was allotted to Lemuel Beasley, but each of these lots was charged with $37.50 for owelty of partition in favor of one Hill, who had purchased the interest of two of the devisees of Thomas Beasley.

In the meantime, at the October rules, 1870, of the County

Court of Culpeper, W. M. Simms, F. M. Latham, and John M. Herndon filed their bill against Thomas W. Beasley, Anne E. Beasley, his wife, and Lemuel Beasley, the object of which was to sell the six-acre lot of land, purchased by Mrs. Beasley from Simms to pay off the balance of the purchase money due therefor to Herndon, and this bill was taken for confessed, and, on September 19, 1871, a decree was entered appointing two commissioners, who were the plaintiff's counsel, to sell the lot, unless within sixty days the amount of the debt, with interest, due to Herndon, should be paid. This sale was never made, but on February 25, 1898, after the death of Anne E. Beasley, her children and William Simms conveyed the lot to one J. T. Jackson by deed duly recorded, which recited the sale by Simms in 1859, of the lot to Mrs. Beasley for $250, which was not paid in cash, and therefore no deed executed at that time; that all the purchase money had been paid long since, and that Simms was willing to convey the lot, &c., and that as Mrs. Beasley had died after contracting to sell the lot to Jackson, her children wished to carry out the mother's contract and convey the lot to Jackson, &c.

At the September rules, 1872, Anne E. Beasley, by Thomas W. Beasley as next friend, filed her bill against her infant children, alleging the provisions of the will of Thomas Beasley, deceased, the partition of the land of which he died seized, the allotment of the 31½ acres, part thereof to herself and children, and asking that this land be sold under the decree of the court to enable her to pay the purchase money for the 6 acres of land purchased by her of W. M. Simms, upon which she resided, so that it might be retained by her as a home for herself and children. The bill sets out that the 31½ acres of land had been devastated, as the result of the civil war; that all buildings, fences, and timbers thereon had been swept away; and that she, the plaintiff, was without means to improve the land; that she and her children were wholly destitute of means, and could with difficulty live;

and that unless the 31½ acres of land was sold, and the proceeds applied to the satisfaction of the debt due to Herndon as assignee of Simms for the 6-acre lot, the lot of 6 acres would be sold to satisfy the debt, and she and her children would thereby be deprived of their home, which was all they possessed, &c.

The infant children of Anne E. Beasley over the age of 14 years (two in number) answered her bill, admitting the allegations thereof, and uniting in the prayer for the sale of the 31½ acres of land, and the application of the proceeds to the payment of the purchase money due on the 6-acre lot. The other infants, by their guardian, *ad litem,* filed a formal answer. Depositions were taken in support of the bill, which show that Anne E. Beasley was without means; that her husband was a carpenter, in delicate health, dependent on his daily labor to support his family; and that a sale of the 31½ acres of land, and the application of the proceeds therefrom to the payment of the debt due on the 6-acre lot, upon which the family resided, would be to the interest and advantage of all parties interested. On November 14, 1872, a decree was entered directing a sale of the land, and appointing Lunsford L. Lewis a commissioner to make the sale, and on June 22, 1874, after due advertisement, Lewis, commissioner, sold the land at public auction to Patrick Doyle, at $15.00 per acre, who complied with the terms of sale by paying $40.00 cash, and executing his two bonds for $260 each, at one and two years, with Simon Doyle as surety; the memorandum of sale and receipt for cash payment being signed, "L. L. Lewis, Com'r, per Hoxey," and Simon Doyle signing the bonds with his mark.

On April 3, 1875, Lewis, commissioner, filed a report of this sale to the court, and with it the purchase money bonds given by Patrick Doyle, the report showing the disbursement of $9.00 of the cash payment, and a decree was entered confirming the sale and appointing Lewis to collect the purchase money bonds as they became due, and requiring him to execute a proper re-

ceiver's bond, and to report his proceedings to the next term of the court, but no authority was given him to make a deed for the land to Doyle. No further proceedings were had in this suit until its dismissal at the June term, 1885, under the seven-year rule, except that on June 5, 1878, Commissioner Lewis executed his bond as receiver in the cause.

After the decree of September 19, 1871, in the suit of *Simms* v. *Beasley,* directing a sale by commissioners of the 6-acre lot upon which Mrs. Beasley and her family resided, to satisfy the debt due thereon to Herndon, no further proceedings were had therein until June 7, 1879, when it was also dismissed under the seven-year rule.

On December 15, 1873, the treasurer of Culpeper county sold for delinquent taxes for the year 1872 the entire Thomas Beasley tract of land, and one C. A. Saunders became the purchaser thereof for $33.00, which sale was regularly reported to and confirmed by the court, and ordered to be certified to the auditor.

On December 30, 1876, the clerk of he County Court of Culpeper made a deed to Saunders, reciting the said sale, &c., and that E. B. Hill and Henry Hill had redeemed their share of the land, leaving 149 acres unredeemed, and this 149 acres he conveyed to Saunders, pursuant to the order of the County Court, directing the same to be made in the mode required by law, and this deed was recorded January 23, 1880.

By deed dated July 27, 1878, Saunders and his wife made a deed to Patrick Doyle, reciting the tax sale mentioned above, and the deed to Saunders from Payne, clerk; that Patrick Doyle had become the purchaser of the share of Thomas Beasley and Lemuel Beasley in the land, and had, by the consent and agreement of Saunders, redeemed said two shares by paying to him the sum of $22.39, the proper proportion of the taxes, &c., chargeable to said lot, and, in consideration thereof, conveyed these lots or parcels of land to Patrick Doyle. This deed was also admitted to record on January 23, 1880.

Patrick Doyle died in 1896, Thomas W. Beasley in 1897, and Anne E. Beasley in 1898. There were no children born to Anne E. Beasley until after the death of Thomas Beasley and the probate of his will, the oldest of the children having been born in 1854.

In January, 1898, Anne E. Beasley and her children filed a memorandum in the clerk's office of the Circuit Court of Culpeper county for a chancery suit against Simon Doyle, administrator of Patrick Doyle, deceased, and John Doyle, the heir at law of Patrick Doyle, deceased, and sued out of the clerk's office an order of publication against John Doyle, who was a non-resident, in which order of publication it is stated that the object of the suit was to subject the tract of land in Culpeper county, containing 31½ acres, purchased by Patrick Doyle from L. L. Lewis, commissioner, in the chancery suit of *Beasley* v. *Beasley*, to the payment of the balance due on said purchase, for which there was a lien on the land by reason of the retention of the legal title thereto, but before the bill was filed Anne E. Beasley died. At the February rules, 1898, the bill was filed in the name of the surviving co-plaintiffs of Anne E. Beasley, and A. W. Pulliam, administrator of Anne E. Beasley, deceased, was made a co-defendant thereto along with Patrick Doyle's administrator and John Doyle. The bill sets out the filing of the bill by Anne E. Beasley in 1872 in the suit of *Beasly* v. *Beasley*, and the allegations therein made, as hereinbefore stated, the death of Patrick Doyle, and avers that the purchase money for the 31½ acres of land had not been paid, with the exception of the $40.00, the cash payment made to Lewis, commissioner, at the time the sale was made, and prays a sale of the land to pay the balance of the purchase money. The bonds of Patrick Doyle were filed as exhibits with the bill, but just how the plaintiffs obtained them from the record in the suit of *Beasley* v. *Beasley* does not appear.

Simon Doyle, administrator of Patrick Doyle, deceased, and

John Doyle, demurred to and answered the bill, and in their answer denied that the purchase money bonds of Patrick Doyle had not been paid, and claimed the benefit of laches and presumption of payment, and also relied, as a defence, upon the title to the land in question acquired by Patrick Doyle from C. A. Saunders, who had obtained a tax deed.

At the hearing of the cause, the demurrer was not pressed, and, upon the bill and answer and depositions taken for both plaintiffs and defendants, the Circuit Court decreed that the purchase money bonds given by Patrick Doyle to Lewis, commissioner, for the land in question, were still unpaid, and constituted an existing lien on the land in favor of the plaintiffs; that the plaintiffs had not lost their right to enforce the lien either by the statute of limitations or laches, and directed the land to be sold to satisfy the lien upon it. It is from this decree that the case is before us.

There is but a single question presented that requires our consideration, and that is, whether or not the presumption of payment of the debt asserted, arising out of the lapse of time and the laches of the parties, has been overcome by the proof adduced by appellees.

Twenty-two years elapsed after the debt asserted became due and payable, and Patrick Doyle, the alleged debtor, had been dead two years or more before any steps were taken to enforce the lien upon the land in question to satisfy the debt. That there has been the grossest laches on the part of appellees and their mother, in asserting the alleged lien, there can be no doubt. Mrs. Beasley and her family lived within one mile of Patrick Doyle from 1874, when he bought the land from Lewis, commissioner, till his death, in 1896. Neither she nor her family were ignorant of the sale of the land to Doyle, and that he owed originally a large part of the purchase money. She had caused the land to be sold to Doyle with the view of applying the proceeds to the payment of the debt due on her home, for which

she was being pressed when she instituted her suit. From some source she obtained the means with which to pay the debt on her home, as the suit to enforce it was abandoned as soon as the sale of the 31½ acres of land to Patrick Doyle was consummated. That Mrs. Beasley had no other means with which to pay the debt on her home, except the proceeds of sale of the 31½ acres to Patrick Doyle, she declared in her bill, as we have seen, and in this she was corroborated by her children over 14 years of age in their answer to the bill.

To overcome the presumption that this debt has been paid, appellees rely on the deposition of Judge L. L. Lewis, who, as commissioner, made the sale to Patrick Doyle, and of Mrs. Yowell, one of the appellees, and a daughter of Anne E. Beasley, deceased.

Judge Lewis was made United States District Attorney about the time the sale to Patrick Doyle was made in 1874, and practically became a resident of the city of Richmond. He was a member of this court from 1882 to 1895, and has been, as he states, but very little in the county of Culpeper since 1874. When he testified in this case in June, 1898, upon being asked if he had any recollection, one way or the other, as to the payment of these bonds (meaning the Patrick Doyle bonds), Judge Lewis frankly answered: "No, I have no recollection of ever having received a penny, as I have said, on account of them. The transactions are now so old that they have faded from my recollection. I do recollect the fact that there was a suit of the kind, and that I was appointed commissioner to collect the bonds. About that time, as I have said, I was practically living here in Richmond, and the whole thing has faded from my recollection."

As has been stated, the transaction in which Doyle gave the bonds was conducted by a Mr. Hoxey, a near relative of Judge Lewis, who attended to some business matters for him when he was away from the county, and who resided in Culpeper long after this transaction was had. Colonel Cochran, the law partner

of Judge Lewis when the suit of *Beasley* v. *Beasley* was brought by them as counsel for Anne E. Beasley in 1872, continued to live and practise his profession in Culpeper county after Judge Lewis left, and until 1883, when he died. What transactions may have been had by Mrs. Beasley directly with Patrick Doyle, who lived but a mile from her, or through Colonel Cochran or Mr. Hoxey, after Judge Lewis left the county and ceased to attend to any business there, Judge Lewis could not know, and does not pretend to say. He simply says that he knows nothing of the bonds in question having been paid, and no more.

Mrs. Yowell throws no light on the subject, but makes a number of statements as to declarations made by her mother to her, which, if made, are declarations in the interest of the declarant, and are not competent evidence, and they are wholly irreconcilable with the conduct of the parties with reference to this alleged indebtedness, in view of the facts as to the financial circumstances of Mrs. Beasley and her family through all the years that this indebtedness to her is alleged to have remained unpaid and not called for. That they were poor and found it difficult to obtain a support, is not only stated in the bill filed by Mrs. Beasley, but is nowhere denied in this record, and no sort of explanation of the delay of over twenty years in asserting the claim they now make, and until after the death of Patrick Doyle, is attempted.

Mrs. Yowell lived with her mother till 1880, when she was 25 years of age, and went to reside in another county, and does not claim to have been in Culpeper more than once or twice a year on a visit since. She attempts to show that Mrs. Beasley paid Simms, for the six-acre lot bought of him with money she borrowed from Lemuel Beasley, and says that Lemuel Beasley got the money to lend her mother from the sale of his 26½ acres of land to Patrick Doyle; that she is just as sure of this as she is of everything else that she had testified to. Now, it appears that the money for the six-acre lot was paid to Herndon, Simms' as-

signee, and not to Simms; that Lemuel Beasley sold his 26½ acres of land to Simon Doyle, and not to Patrick Doyle, in April, 1872, for $300 cash, $100 in one year, and $100 in two years, yet Mrs. Beasley filed her bill to sell the 31½-acre tract five months after, alleging that the debt on the six-acre lot was then unpaid, and that she had no other source from which to derive the means with which to pay it, except from a sale of the 31½-acre tract, and witness, Mrs. Yowell, filed her answer to the bill, under oath, stating that the allegations of the bill were true. The witness was wholly unable to say how much money her mother borrowed of Lemuel Beasley, and does not claim that he had any other source from which to get the money except from a sale of his 26½ acres of land. On the contrary, she admits that Lemuel Beasley was not only inclined to squander his money, but was at times an inmate of the poorhouse in Culpeper county. The witness carefully concealed all she knew about the transaction and the payment for the six-acre lot by her mother with money borrowed of Lemuel Beasley, telling no one about it except her husband, until after Patrick Doyle was dead, her mother dead, and this suit had been pending for some time.

Patrick Doyle's bonds became due in 1876. It is nowhere claimed that he was unable to pay them, and they could have been collected, if not voluntarily paid, by enforcing the lien on the land reserved to secure their payment, yet it was twenty-two years after the bonds became due, and twenty-six years after the institution of the suit by Mrs. Beasley for the avowed purpose of selling the land for which the bonds were given, to obtain the means with which to prevent her home from being sold, before this suit was brought. The oldest of Mrs. Beasley's children was born in 1854, as we have seen, and the youngest became of age some years before Patrick Doyle died. Eighteen years before Mrs. Beasley died Patrick Doyle obtained the deed from Saunders for the 31½ acres of land, and recorded it, still no steps were taken to subject this land to the payment of Patrick

Doyle's bonds to Lewis, commissioner, until January, 1898, and it is neither averred nor proven that any of the Beasleys ever demanded of Doyle payment of the bonds, although, as fully appears in the record, they found it difficult to obtain a support.

Under the circumstances surrounding these people, it is inconceivable that they would have remained silent through all these years, without taking steps to collect the bonds now sued on, if they had not been paid. The only suggestion of any excuse for the long delay in bringing this suit is that, during a part of the time after these bonds became due and payable, some of the appellees were infants. Whether appellees, before the death of their mother, had an interest in the debt sought to be collected in this suit is immaterial. The question here is, has the alleged indebtedness been paid?

The presumption arising out of the lapse of time, the conduct of the parties interested, and the circumstances surrounding them, that the debt has been long since paid, is irresistible. Not paid to Lewis, commissioner, or as receiver, but directly or indirectly by Patrick Doyle, with the knowledge and approval of Mrs. Beasley, applying the money to the payment of the debt due to Herndon secured on the six-acre lot, and the payment of the balance to Mrs. Beasley. J. T. Jackson, who is not impeached or contradicted as a witness, and who purchased the six-acre lot from Mrs. Beasley, states, substantially, that in his negotiations to purchase the six-acre lot, Thomas Beasley told him, in the presence of Mrs. Beasley, who sanctioned the statement, that while they had no deed for the lot, it had been paid for; that it had been paid for out of the proceeds from the sale of the $31\frac{1}{2}$ acres of land, and that, after paying for it, there was $40.00 coming to them, which they had gotten.

The case for appellees, at best, is clearly one in which any conclusion that a court of equity might arrive at in their favor would be purely conjectural; and for this, if for no other reason, the relief they seek should be denied. See *Nelson* v. *Triplett*,

*ante*, p. 421, just decided by this court, and the authorities there cited.

We are of opinion that the decree appealed from is erroneous and should be reversed, and this court will enter a decree dismissing appellees' bill.

*Reversed.*