# Richmond.

## HOLLADAY v. WILLIS AND OTHERS.

### March 12, 1903.

1. EVIDENCE—*Absolute Deed a Mortgage.*—A deed absolute on its face may, in equity, be shown by parol evidence to be a mortgage, but the presumption in such case always is that the deed is what, on its face, it purports to be; and, in order to repel that presumption, the evidence must be clear, unequivocal, and convincing.

2. MORTGAGE—*Conditional Sale—Case in Judgment.*—A conveyance to secure a debt is a mortgage, but if the conveyance extinguishes the debt, and the parties so intend, so that a plea of payment would bar an action thereon, an agreement then or thereafter with the debtor giving him an opportunity to re-acquire the title is a conditional sale. The continued existence of a debt is the test of a mortgage. The character of the transaction, however, is fixed in its inception, and is unaffected by subsequent events unless they amount to a new contract. The evidence in the case in judgment fails to establish a mortgage, or fraud on the part of appellant, and shows only an option to repurchase within a given time on terms stated.

Appeal from two decrees of the Circuit Court of Orange county, pronounced May 9, 1900, and July 22, 1901, respectively, in a suit in chancery, wherein the appellee, Leah S. Willis, was the complainant, and the appellant and another were the defendants.

*Reversed.*

The opinion states the case.

*A. L. Holladay* and *George Perkins*, for the appellant.

*James W. Morton* and *Gordon & Gordon*, for the appellees.

WHITTLE, J., delivered the opinion of the court.

This controversy arose as follows: Appellee, Leah S. Willis, who was the owner of a house and lot near Charlottesville, Virginia, on October 8, 1894, borrowed of the Iron Belt Building and Loan Association $800, and executed a deed of trust on the property to secure it.

The house and lot was occupied by appellee together with her husband, H. G. Willis, and his parents, R. G. Willis and R. A. Willis, as a residence. At the date of the transaction hereinafter referred to, R. G. Willis and R. A. Willis were the owners of a trust fund in the hands of appellant, H. T. Holladay, a brother of Mrs. R. A. Willis, as trustee, the investment of which was subject to their control and direction. Appellee having made default in the payment of the debt due the association, for the purpose of discharging the demand and relieving the house and lot from the deed of trust and securing it as a home for appellee, it was suggested by the elder Willis and wife that so much of the trust fund as was necessary should be applied to that purpose. Accordingly, at their request, appellant, who lived at Rapidan, Culpeper county, Virginia, came to Charlottesville, and a conference ensued between him and H. G. Willis and his parents touching the matter in hand. The scheme of paying the debt with the trust fund was discussed, but it was decided not to be feasible, for the reason that cash was required to meet the demand of the association, and the trust fund was not in hand, and not due at that time.

It appears that the land representing that fund had been sold, and the purchase money ($1,800) was payable in three instalments of $600 each, in July, 1896, 1897, and 1898. Appellant was desirous to co-operate in securing the property for the parties, and, with that end in view, proposed that he would become the absolute purchaser of the house and lot for an amount sufficient to discharge the lien upon it, and take a

deed from the trustees of the association and H. G. Willis and wife, conveying the property to him; and that he would thereupon give a written option to Mrs. R. A. Willis to purchase it within two years from the date of the deed at the price paid by him, with interest and cost. In the mean time, the first and second instalments of the trust fund would have matured, and supply the necessary means with which to effect the purchase. This arrangement was agreed to by the parties; but appellee, who was represented by her husband, was not present during a discussion of the details. For that reason, before the matter was finally closed, appellant sought an interview with appellee and asked her if she understood that in selling the property to him she was parting with her entire interest in it. She replied in the affirmative, as she afterward explains in her deposition, her idea being that the trust fund would be available before the expiration of the option period, and that the property would be purchased by Mrs. R. A. Willis, and ultimately pass to H. G. Willis as heir to his mother.

In pursuance of the plan agreed on, appellant paid the debt to the association; and, on January 22, 1896, appellee and her husband united with the trustees of the association in an absolute deed of bargain and sale whereby they conveyed the house and lot to him.

Subsequently, appellant executed the option agreement contemplated, by the terms of which Mrs. R. A. Willis was allowed two years from the date of the deed within which to purchase the house and lot by paying to appellant out of the trust fund the amount of his expenditure, with interest and cost.

At the same time, R. G. Willis and wife directed appellant, as trustee, in writing, to invest as much of the trust fund as was necessary, under the provisions of the option contract, in the house and lot.

In pursuance of that direction, appellant, in good faith, upon collecting the first $600 instalment of the trust fund, ap-

plied it, as required, toward the purchase of the property for Mrs. R. A. Willis.

Thus matters remained until February, 1897, when R. G. Willis and R. A. Willis changed their minds in respect to the purchase of the Charlottesville property, and directed the trustee to invest part of the trust fund in a farm in Orange county; to repair the buildings thereon, and to supply the place with necessary farming implements, and invest the residue of the fund at interest.

It is not pretended that appellant was in any manner responsible for this change of program. On the contrary, when apprised of it, he frankly told the parties that if he carried out their instructions and bought the farm, they would have to give up the house and lot, as their means were insufficient to purchase both. With a thorough understanding of the consequences, they adhered to the determination of buying the farm, assigning as a reason for the change that H. G. Willis was not making a support for his family in Charlottesville; that he had become very dissipated, and it was necessary to remove him from his then surroundings. The farm was accordingly purchased, the Charlottesville property was surrendered to appellant, and appellee and her family and R. G. Willis and wife removed to their new home in Orange county. In the following June, a year and a half after his purchase, appellant sold the house and lot to W. L. Maupin for $1,600. Nearly three years thereafter, to-wit, in April, 1900, appellee brought suit in equity against appellant and Mrs. R. A. Willis to recover of the former the difference between the amount paid by him for the property and the price at which he afterwards sold it to Maupin.

The bill also prays that, if necessary, Mrs. R. A. Willis may be held responsible for her failure to carry out her agreement to purchase the property from appellant in accordance with the stipulations of the option contract.

Appellee maintains, (1) that the deed referred to, while absolute on its face, is in fact a mortgage; and (2) that appellant's conduct in connection with the procurement of the deed was fraudulent. She, therefore, insists that he ought to be regarded, in equity, as a trustee, and required to account for and pay over to her any profit that may have accrued to him from the transaction.

Appellant and Mrs. R. A. Willis, in their answers to the original and amended bills, set out in detail their version of the matter, and insist that their conduct had been in all respects fair; and that the transaction was fully understood and acquiesced in by appellee. They also maintain that the deed in question is what it purports to be, an absolute conveyance, and not a mortgage.

At the hearing, the trial court adjudged the deed to be a mortgage, and decreed that appellant should be held responsible to appellee for all profit made by him on the sale to Maupin.

The doctrine that a conveyance of land, absolute on its face, may in equity be shown by extrinsic parol evidence to be a mortgage is, of course, too well settled to require either discussion or the citation of authority to sustain it. But it is equally well settled that the presumption in such cases always is that the deed is what on its face it purports to be; and, in order to repel that presumption, the evidence must be clear, unequivocal and convincing. 3 Pom. Eq., sec. 1196; *Phelps* v. *Seely*, 22 Gratt. 573; *Snavely* v. *Pickle*, 29 Gratt. 27; *Edwards* v. *Wall*, 79 Va. 321.

The rule is thus stated by Chief Justice Ruffin, in *Franklin* v. *Roberts*, 2 Iredell 560: "When the answer denies the right of redemption the proofs must be clear, consistent and cogent, composed of circumstances incompatible with the idea of an absolute purchase, and leaving no doubt on the mind."

The doctrine is in derogation of the general rule, that parol evidence is inadmissible to contradict or substantially vary the

legal import of a written instrument.  *Towner* v. *Lucas*, 13
Gratt. 705.  It is within the mischief intended to be prevent-
ed by that rule, and hence the necessity for the qualification,
that the proofs must be so convincing as to leave no doubt on
the mind that a mortgage and not an absolute conveyance was
intended.  The evidence in this case falls far short of that re-
quirement.  Indeed, it shows quite the reverse.  It appears
that the only contract between the parties is embodied in the
deed of January 22, and the option contract of February 6,
1896; and that appellee understood that the effect of her deed
was to divest her of all interest in the property, but that the
right to purchase it at actual cost within two years was guaran-
teed to Mrs. R. A. Willis by the terms of the option.

So that the decision of the case must depend upon the proper
construction of those instruments, taken together, in the light
of the contemporaneous understanding of the parties.

The distinction between a mortgage and a conditional sale is
clearly drawn in *Turner* v. *Kerr*, 44 Mo. 429, as follows: "A
mortgage and a conditional sale are said to be nearly allied to
each other, the difference between them being defined to con-
sist in this: that the former is a security for a debt, while the
latter is a purchase accompanied by an agreement to resell on
particular terms. . . .  Where the parties intend a condi-
tional sale, and not a mortgage, and make their contracts in ac-
cordance with their intentions, it is not the province of the
court to circumvent and frustrate their intentions.  It is never-
theless true that neither the intention of the parties nor their
express contract can change the essential nature of things.  A
conveyance to secure a debt is a mortgage, and the stipulations
of the parties cannot make it otherwise.  But a conveyance to
pay a debt is a totally different affair.  If the conveyance ex-
tinguishes the debt, and the parties so intend, so that a plea of
payment would bar an action thereon, a subsequent or contem-
poraneous stipulation in the interest of the debtor, securing to

him an opportunity to re-acquire the title, ought not to be construed to the creditor's prejudice.   Such a transaction is no mortgage, but a conditional sale."

In *Sadler* v. *Taylor*, 49 W. Va. 104, 38 S. E. 583, the rule is stated thus:   "If, by the intention of the parties, the transaction was originally a security for the payment of money, it will be held in equity to be a mortgage, and the maxim, 'Once a mortgage, always a mortgage,' applies, and it will remain such, unless changed by a new contract.   .   .   .   But if, originally, the transaction was a sale of property with a right of repurchase at the option of the grantor, it is a conditional sale, and no subsequent event short of a new agreement between the parties can convert it into a mortgage.

"When it is clear that after the execution of the instrument no debt remains due from the grantor to the grantee, the transaction is a contract of sale, and the deed must be given its legal effect."   1 Jones on Mortgages, sec. 263.

Applying these principles to the facts of the case in hand, the deed and option contract constitute a conditional sale and not a mortgage.   There was no indebtedness due from appellee to appellant and Mrs. R. A. Willis, or to either of them, and hence there can be no mortgage *by implication*.   The existence of a debt is the test.   A mortgage without a debt to support it is a legal solecism.   3 Pom. Eq., sec. 1195; 1 Jones on Mortgages, sec. 265.   The transaction between the appellant and the association extinguished the indebtedness of appellee; and, by the understanding of appellant and appellee, the payment of that indebtedness did not constitute a new debt, but a consideration for the deed to the house and lot from the latter to the former.   The character of the transaction is fixed in its inception, and is what the intention of the parties makes it.   If it was a mortgage originally, it remains so; and the same is true of a conditional sale.   In either case, it is unaffected by subsequent events, unless they amount to a change of contract.   The

form of the transaction and the circumstances attending it are but the means of ascertaining the real intention of the parties.

If at the sale to Maupin the property had brought less instead of more than appellant paid for it, it is quite clear that he would have had no remedy over against appellee for the deficit, as would unquestionably have been the case had the relation of creditor and debtor existed between them.    The title to the property passed by the deed to appellant, subject to be divested only by a performance of the condition contained in the option contract—and that supplies all the essential elements of a conditional sale, in which the ground of defeasance is dependent on *a condition subsequent.*

While the case is unquestionably one of unusual hardship, and appeals strongly to the sympathies, nevertheless in its legal aspects this court has been unable to reach the conclusion either that the deed in question is a mortgage, or that it was fraudulently procured.

An attempt on the part of the courts to correct the hardship of particular cases by a departure from settled principles, if permissible, would, in the general result, inevitably accomplish far more harm than good.

As was observed by Chief Justice Marshall in *Conway* v. *Alexander,* 7 Cranch, 218, 3 L. Ed. 321, "To deny the power of two individuals capable of acting for themselves to make a contract for the purchase and sale of lands defeasible by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of a right to repurchase the same land at a fixed price, and at a specified time, would be to transfer to the courts of chancery in a considerable degree the guardianship of adults as well as infants.    Such contracts are certainly not prohibited either by the letter or the policy of the law."

It follows from these views that the decree complained of is erroneous, and must be reversed.

*Reversed.*