# Staunton.

### BACHRACH v. BACHRACH.

September 15, 1910.

Absent, Cardwell, J.

1. MORTGAGES—*Oral Evidence to Show Mortgage—Presumption.*—A deed absolute on its face may be shown by oral evidence to have been intended as a mortgage. Such evidence is not confined to cases of fraud, accident or mistake. The presumption is that such a deed is what it purports to be, and oral evidence to show that it is a mortgage must be clear and convincing.

2. MORTGAGES—*Absolute Deed—Case in Judgment.*—Whether a deed absolute on its face is to be regarded as a mortgage depends upon the circumstances under which it was made, and the relations and negotiations between the parties. In the case in judgment, the admissions of the grantee, the circumstances under which the deed was made, and the subsequent conduct of the parties, especially the collection of rents by the mortgagor for two years after the conveyance without question on the part of the grantee, sufficiently show that the deed in question, although absolute on its face, was in fact a mortgage.

Appeal from a decree of the Circuit Court of Roanoke county. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Hart & Hart* and *Hairston & Hairston*, for the appellant.

*Scott, Altizer & Watts*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The question involved in this appeal is whether or not the trial court erred in holding that the deed from Jamison, trustee, to the appellant, Isaac Bachrach, conveying a house and lot in the city of Roanoke, which was absolute on its face, was in fact a mortgage to secure a debt due to him from the appellee, Mrs. Ida Bachrach.

It appears that the appellee, in the year 1889, purchased the said house and lot, for which she agreed to pay the sum of $725. She paid $250 in cash and assumed the payment of certain notes evidencing the balance of the purchase money due from her vendor. The payment of these notes was secured by a deed of trust. In December, 1891, there remained due and unpaid on these notes about $200 or $225, when the trustee in the deed of trust sold the house and lot at public sale and the appellant became the purchaser at the price of $250, which sum seems to have been sufficient to satisfy the balance due on the notes secured by the deed of trust and the costs of sale. The trusteee, upon the payment of the purchase price, executed a deed, absolute on its face, conveying the property to the appellant.

The appellee claims that the appellant purchased the house and lot for her under an agreement that he would do so, advance the purchase price for her and take the legal title to himself to secure the repayment of the sum so advanced. The appellant denies that there was any such agreement, and claims that he purchased and paid for the property for himself.

It is well settled in equity, that although a deed is absolute on its face it may be shown by oral evidence that it was intended as a mortgage, and that such evidence is not restricted to cases of fraud, accident or mistake. See *Snavely* v. *Pickle*, 29 Gratt. 27; Note to *Thornbrough* v. *Baker*, White & Tudor's Lead. Case. in Eq. (4th ed.), Vol. 2, Pt. 2, 1983-1985, and cases cited.

The presumption is that a deed absolute on its face is what it purports to be, and while oral evidence is admissible to show that it is a mortgage, it must be clear and convincing. *Snavely* v. *Pickle, supra;* 3 Pom. Eq. Jur. (3rd ed.), sec. 1196.

Whether such an instrument is to be regarded as a mortgage depends upon the circumstances under which it was made, the relations and negotiations between the parties.

It appears that at the time of the trustee's sale the appellee was financially embarrassed, and was unable to pay the balance of the debt secured by the deed of trust. Shortly prior to that time she entered into negotiations with one of her creditors, Mr. Hughes, of Lynchburg, to purchase the house and lot at the price of $700, which would be sufficient to satisfy the debt ($450) which she owed him and to pay the residue of the deed of trust debt. Mr. Hughes agreed conditionally to make the purchase if upon examination he found that the house and lot was worth that sum. The appellee thereupon consulted with her counsel as to the best method of perfecting her title to the property so that Mr. Hughes could get good title to it in the event he concluded to take the property. She was advised by her counsel to have the trustee advertise and sell the property, to get Mr. Hughes to bid it off in his name, pay the balance due on the deed of trust debt and cancel her indebtedness to him. The trustee at her request did advertise the property for sale, but Mr. Hughes before the day of sale examined or had the property examined, declined to bid upon it and did not attend the sale, because he was unwilling to pay $700 for it, the price asked by the appellee, but a few days afterwards offered her $525 for it, which she declined to accept. The appellee, as she claims, applied to her father and the appellant, her brother-in-law, who was in the habit of aiding her financially, and requested that one or the other of them should bid in the property for her when it was sold by the trustee; that at her instance and her father's the appellant agreed to bid off the property for her at a sum suffi-

cient to satisfy the balance due upon the debt secured by the
deed of trust, to advance that sum for her and to have the
house and lot conveyed to him to secure the payment of the
sum. The appellee, her father and the appellant were all
present on the day of sale, and the property was bid off by
the latter at the price of $250, and upon the payment of that
sum the trustee conveyed the property to him by a deed abso-
lute on its face.

The appellant, in his examination-in-chief, denies positively
that there was any agreement between himself and the ap-
pellee as to the purchase of the property, and asserts that he
purchased it for himself. On his cross-examination he states
that when he went to the sale with the appellee's father, there
was some arrangement between them by which one or the
other was to bid for the property, but it had not been de-
termined which of them should do so; and when asked the
direct question on cross-examination, if the arrangement or
agreement between himself and Mr. May was not substantially
as claimed and testified to by the appellee—that he should bid
off the property for her and advance the money to pay for
it—his reply was, "If there was anything of the kind I have
forgotten it," but that he did not think there was.

The conduct and admissions of the appellant are incon-
sistent with the claim he now asserts. The evidence of the
other witness and the circumstances surrounding the transac-
tion strongly corroborate and sustain the appellee's conten-
tion. It clearly appears by the appellant's own admissions
that he did not bid off the property for himself. It was
knocked off to him for less than half its value, for within
a few days afterwards the appellee was offered $525 for it
by Mr. Hughes, which offer she declined to accept. The
appellee collected the rents from the property as her own
for more than two years, and until she and the appellant's
wife, who was her sister, had some disagreement, when the
appellant notified the tenant in the property to pay the rents

to him. The appellee at once consulted her counsel in reference to the matter and he advised her to permit the appellant to collect the rents until he had received a sum sufficient to pay the advances made by him for her. The latter never asserted any claim to the rents collected by the appellee or sought to recover them from her, and never; so far as the record shows, made the claim that he had purchased the property for himself until just before the institution of this suit, when the appellee and her husband, upon the advice of her counsel, called upon him for a statement of his collection and disbursements, so that there might be a settlement between them.

After a careful consideration of all the facts and circumstances disclosed by the record, we are of opinoin that the trial court did not err in holding that the deed in question, although absolute on its face, was a mortgage, and in enforcing it as such.

The decree complained of must be affirmed.

*Affirmed.*