# Wytheville

## HILL AND OTHERS v. SAUNDERS AND OTHERS.

### June 12, 1913.

1. EVIDENCE—*Absolute Deed a Mortgage—Presumption.*—While a deed absolute on its face may be shown to be a mortgage, the settled doctrine in this tSate is that the presumption is that the deed is what, upon its face, it purports to be, and to overcome this presumption the evidence must be clear, unequivocal and convincing.

2. EQUITY—*Laches.*—Courts of equity refuse relief to parties who, with conscious knowledge of the situation, have chosen to sleep on their rights until all of the principal actors in the transaction have passed away, and when, from the loss of evidence any conclusion that the court might reach would necessarily be conjectural and founded upon random guess rather than upon any just ground of belief based upon sufficient proof, a just determination of the controversy between the parties would be impossible. In such cases the courts leave the complaining parties where their inexcusable negligence has placed them.

Appeal from a decree of the Circuit Court of Culpeper county. Decree for the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Grimsley & Miller,* for the appellants.

*Rixey & Hiden, Waite, Perry & Jeffries* and *Thos. E. Blakey,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The bill in this case was filed by the widow and heirs of

Edward B. Hill, deceased, (who was the former claimant of two farms in Culpeper county, known respectively as the Petty farm, containing 630 acres, and the Lightfoot farm of 378½ acres ) against the personal representatives and devises of C. A. Saunders, deceased. The object of the suit was to have certain deeds absolute on their face, conveying these properties to Saunders, declared to be mortgages; also for an account of indebtedness of the estate of Hill to the estate of Saunders; and upon such settlement that complainants should be allowed to redeem the farms, or that they should be sold and the balance of the purchase money, after discharging the indebtedness, paid over to them. From a decree dismissing the bill this appeal was granted.

Stated generally the history of the case is as follows: Edward B. Hill resided with his family, consisting of his wife and four children, at Culpeper, Virginia; and shortly after the Civil war he engaged in the mercantile business at that place as a member of the firm of Hill, Burdette and Company. C. A. Saunders married Hill's sister, and lived in the city of New York, where he was engaged in buisness. He was a man of the highest integrity, of exceptional business ability and large means. His brother-in-law, Major Hill, was on the contrary a poor business man, and in straitened financial circumstances. The social relations between the two families were extremely intimate and cordial; and the personal relations between Saunders and Hill were as close and affectionate as if they had been brothers. A room was reserved at the Hill home for Saunders and his wife, and they annually spent their summer vacations in Culpeper as boarders in the household. The mercantile venture of Hill, Burdette and Company proved unsuccessful, and ultimately resulted in disastrous failure. During the continuance of the business, Hill frequently called upon Saunders for financial assistance, and

when the collaspe finally came in 1875, Saunders had loaned him and the concern large sums of money without security.

In the year 1860 Hill purchased at a judicial sale the Petty farm at $12.65 per acre, the entire price being $8,-526.10. He made the cash payment of $252.11, but when he was called on after the war to pay the balance of the purchase money he was wholly unable to do so. In that emergency he again appealed to his benefactor for help. Saunders, in reply to Hill's letter, wrote under date of June 1, 1875, among other things: "I said before I do not want the property and will re-deed it as soon as my debt is paid, and will give my obligation to that effect, and will at once try to buy the other interests in it and get the court title perfect, so that it can be sold if an opportunity offers." At that time the place was supposed to contain valuable iron ore deposits, which in point of fact was afterwards discovered to be unfounded.

These negotiations resulted in Saunders becoming the substituted purchaser of the Petty farm. On August 10, 1875, Hill and wife conveyed to him all their interest in the land by deed with general warranty of title; but several years elapsed before Saunders acquired the outstanding interests in the property referred to in his letter and received a deed from the commissioners.

From time to time, Hill made other calls on Saunders, as his necessities required, which amounted in the aggregate, including the purchase price of the Petty farm, to over $20,000, or nearly three times the value of the land at the date of Saunders purchase. In other letters exhibited with the record, he iterated his position with respect to these transactions, emphasizing the fact that he had no desire at that time to own the land and was willing to re-convey it to Hill upon his returning the money advanced.

In 1859, Hill purchased from Edward Lightfoot the tract known as the Lightfoot farm, and executed six bonds for $1,250 each for the purchase money, secured by a deed of trust upon the land. Hill was unable to meet this liability; and in response to his earnest appeal, Saunders, on July 30, 1889, paid the purchase money, amounting to $13,351.56, and D. A. Grimsley, substituted trustee, and E. B. Hill united in a deed conveying to Saunders the Lightfoot farm, the deed reciting that the consideration was the payment of the amount of the lien theron, and that Hill was "anxious to pay off and discharge the whole of said debt so due to Saunders . . and for this purpose has agreed to sell and convey" the land to him. The amount paid was more than the value of the property at that date.

Throughout these dealings Hill was hopelessly and continuously insolvent, and at no time ever paid or offered to pay the large sums of money advanced by Saunders at his request. Saunders in the meantime, paid the taxes on both farms, leaving Hill in full possession and permanency of the profits (which indeed constituted his only means of support), and this arrangement continued until Hill's death in February, 1890, his widow receiving the rents for that year. At the close of the year 1890 the family had become dispersed, the two sons were living and in business out of the State; both daughters were married and residing in Baltimore; and their mother spent much of her time with them. Mr. Saunders, as the recognized owner, took possession of the farms without suggestion or objection from any quarter. His possession and absolute claim of ownership was well known to appellants and continued without challenge or adverse claim on their part until after his death in 1905. During the fifteen years of his actual occupancy he spent large sums of money in the cultivation and improvement of these properties, increasing their value fifty *per cent.,* with-

out taking into account the general advance in the price
of land. He bought fifty odd acres adjoining the Light-
foot farm to straighten his boundaries; and, moreover,
farmed and erected permanent improvements upon both
properties upon an extravagant scale, using tile for drain-
ing, and inclosing the farm with wire fences on locust posts.
Among other improvements, he erected five large elegantly
built barns on the Lightfoot place, and a six-room dwelling
on the Petty farm. In fine, his expenditures and better-
ments were of a class that no prudent man would have
made upon property other than his own.

Year after year these outlays continued, with full knowl-
edge on the part of appellants, all of whom were adults
and one a practicing lawyer; yet they never paid or offered
to pay a dollar to redeem the lands, nor intimated by word
or act their ultimate purpose to lay claim to the estate,
until they filed this bill eighteen years after the death
of their father, thirty years after the deed to the Petty
farm, nineteen years after the deed to the Lightfoot farm,
and three years after the death of C. A. Saunders.

It is sometimes difficult to determine whether a deed ab-
solute on its face is in reality a conditional sale or a mort-
gage, but in all such cases the settled doctrine in this
jurisdiction is that the presumption that the deed is what
it purports to be must be overcome by clear, unequivocal
and convincing evidence. *Holliday* v. *Willis,* 101 Va. 274,
278, 43 S. E. 616; *Bachrach* v. *Bachrach,* 111 Va. 232, 234,
68 S. E. 985.

Without regard, however, to what may have been the
original merits of this controversy, and without discussing
any of the other matters of defense, the decree of the cir-
cuit court is obviously right and must be affirmed on the
ground of gross laches on the part of the appellants in
asserting their claim. With conscious knowledge of the
situation, they have chosen to sleep on their rights until all

of the principal actors in the transactions have passed away. Hill and wife, Saunders and wife, and Grimsley, trustee, are all dead, and from the loss of their evidence any conclusion that the court might reach would necessarily be conjectural and founded upon random guess rather than upon any just ground of belief based upon sufficient proof. In such case a court of equity invariably denies relief for the reason that a just determination of the controversy or settlement between the parties is impossible, and, therefore, leaves the complainants where their inexcusable negligence has placed them. *Nelson* v. *Triplett,* 99 Va. 421, 39 S. E. 150; *Doyle* v. *Beasley,* 99 Va. 428, 39 S. E. 152; *Redford* v. *Clark,* 100 Va. 115, 40 S. E. 630.

For these reasons the decree of the circuit court must be affirmed.

*Affirmed.*