## Richmond.

## Snyder v. Grandstaff.

### November 17, 1898.

1. Chancery Pleading—*Multifariousness—Different Aspects of Same Facts—Different Facts.*—A bill is not rendered multifarious by presenting alternative views, or different aspects of the same facts. There must be distinct collocations of distinct and different facts, each presenting different rights, and calling for different relief, to render a bill multifarious.

2. Chancery Jurisdiction—*Reformation—Mutual Mistake—Notice to Purchaser for Value—Demurrer.*—Equity is the proper forum to reform a deed, and a bill which charges mutual mistake in making the deed is not demurrable, even though it fails to charge notice to a purchaser for value. Such notice must be proved, but the defence must be made by plea or answer.

3. Purchaser for Value—*Latent Equities.*—A purchaser for value without notice is not affected by any latent equity, and it is immaterial of what the equity consists, whether it be a lien, encumbrance, trust, fraud, or any other claim.

4. Deeds—*Consideration—Marriage—Existing Creditors of Grantor.*—A deed made by a man to his intended wife, followed by marriage, is conclusively presumed to be in consideration of the marriage, and is based on a valuable consideration, except as to existing creditors of the grantor. Such deeds made since May 1, 1888, are void as to such creditors, but not otherwise.

5. Notice to Purchaser for Value.—*Burden of Proof—Confidential Relations of Grantor and Grantee—Case in Judgment.*—The burden of proving notice to a purchaser for value is on him who alleges it. It will not be implied from the confidential relations existing between the grantor and the grantee. In the case in judgment the evidence fails to establish notice, actual or constructive.

6. Variance between Deed and Prior Contract—*Presumption—Burden of Proof.*—If there be a variance between a preliminary contract for the sale of land and a subsequent deed of conveyance thereof the pre-

sumption is that the deed speaks the final will and intent of the
parties, and the burden is on him who denies this effect of the deed
to rebut the presumption by the clearest and most satisfactory evi-
dence.

7. CHANCERY JURISDICTION—*Construction of Muniments of Title—Adequate
Remedy at Law.*—When one holds land adversely to another, courts of
equity have no independent jurisdiction to merely construe the muni-
ments of title, whether deed or will, of a party out of possession in order
to determine who has the better right. The parties have an adequate
remedy at law.

8. DEVISE TO THREE—*Limitation Over upon Failure of Issue—Deed of Par-
tition—Subsequent Failure of Issue of One Devisee—Case in Judgment.*—
A testator devised and bequeathed his entire estate, real and per-
sonal, to his three grandchildren, to be equally divided between them,
share and share alike, but, on the death of either of them without
issue, his or her share should pass to the survivors or survivor, and in
case all died without issue, then to collateral kin. Subsequently the
grandchildren divided the estate amongst themselves, and, by deeds
reciting the provisions of the will and the partition which they had
made, and their desire " to vest exclusive title to the several parcels
of land in the said parties to whom they had been assigned and allotted
respectively," each conveyed to the other all of· his right, title, and
interest in the property allotted to such other. One of the grand-
children, in contemplation of marriage, conveyed the property so re-
ceived by him to his intended wife and then married her, and shortly
thereafter died without issue, or possibility of issue.

HELD: The title of survivorship of the two surviving grandchildren
passed by their deed to their deceased brother, in his life-time, and by
his deed is vested in his widow.

Appeal from a decree of the Circuit Court of Shenandoah
county pronounced April 27, 1897, in a suit in chancery
wherein the appellants were the complainants, and the appel-
lees were the defendants.

*Affirmed.*

The opinion states the case.

*Walton & Walton,* for the appellants.

*Barton & Boyd,* and *L. Triplett, Jr.,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Shenandoah county. In deciding the case, the learned judge of that court delivered the following opinion, which is filed with, and made a part of, the record:

" Israel Allen devised, in the 3d clause of his will, that after the death of his wife, his whole estate, real, personal, and mixed, should pass to his three grandchildren, L. A. Snyder, Amanda Long, and Joseph V. Snyder, to be equally divided between them, share and share alike, but on the death of either of them without issue, his or her share should pass to the survivors, or survivor, and in case all died without issue, then to collateral kin.

" By deed dated July 20, 1895, L. A. Snyder and wife, Amanda Long and husband (Joseph V. Snyder signing the deed as party of the second part), reciting that under the third clause of the will, the said parties were entitled to one equal third of the estate; that they had agreed upon a partition of the real estate; that Joseph V. Snyder was to be equalized by payment to him of $3,000 out of the personal estate; that the said parties desired ' to vest exclusive title to the several parcels of land in the said parties to whom they had been assigned and allotted respectively,' in consideration of one dollar, &c., conveyed unto the said Joseph V. Snyder, his heirs and assigns, ' all right, title, and interest of the said parties of the first part' in the described property.

" Similar deeds were made to each of the grantors by the other two devisees for the tracts assigned and allotted to each.

" On the 7th of April, 1896, Joseph V. Snyder, referring to this deed for description, conveyed the real estate embraced therein, in fee to Flora Grandstaff, with general warranty, and upon the expressed consideration of one dollar cash in hand paid, and on the same day, and shortly thereafter, intermarried with her. This deed was duly recorded on the 8th, and within some six weeks thereafterwards Joseph V. Snyder died without issue, or possibility of issue. His father is his

heir, and A. J. Grandstaff is his administrator, and his widow and father are his distributees.

"L. A. Snyder, Amanda Long, and Lee Long, her husband, filed their bill to December rules, 1896, claiming that, under the will of Israel Allen, they are entitled to the real estate by virtue of survivorship; that Mrs. Flora Snyder withholds possession from them; that under a proper construction of the deed of 20th of July, 1895, they never parted with this interest, but if such deed should be otherwise construed, that it was executed under a mutual mistake, and contrary to the real intention of the parties; and they pray that the same may be reformed, and for general relief. To this bill the administrator and widow are made parties. No claim is asserted against or through the estate of Joseph V. Snyder. The widow demurs to the bill, and files her answer. Depositions on the part of the plaintiffs have been taken, with intent to show mistake, and on the part of the defendants to show that the consideration of the deed to her was marriage. In her answer, after denying any mistake in the deed, she claims to be a purchaser for value without notice.

"I do not think the bill is multifarious, for parties have the right to state their case in the alternative. Multifariousness does not arise from the · presentation of different views of the same collocation of facts, but it must be two distinct collocations of distinct and different facts, each collocation presenting different rights, and calling for different relief. Equity is the proper forum for the reformation of a deed, and I have reached the conclusion that this claim in the bill of a mutual mistake prevents the bill from being demurrable, even though the bill fails to allege notice to a purchaser for value. There is no doubt that complainants must prove notice to a *bona fide* purchaser for valuable consideration, but under the decision of the · Court of Appeals in *Rorer Iron Co.* v. *Trout*, 83 Va. 415, the defence must be made by plea or answer. This case seemingly conflicts with *Carter* v. *Allen*, 21 Gratt., on this point, but it is

a later case, and the views of the court are sustained by reference to various authorities, and I have not observed that it has yet been overruled.   Besides, in the case at bar the defence is made by answer, and can better be considered in connection with the evidence than upon demurrer.   I therefore overrule the demurrer.

" Passing from the demurrer, the first suggestion is the question we adjourned from the demurrer, namely, assuming that a mistake has been made, how is the defendant affected thereby?

" First.  A purchaser for value and without notice is not affected by any latent equity.   A mutual mistake stands on the same footing as any other equity.   Kerr on Fraud and Mistake, p. 436, specifically lays this down as to mistake.   I quote: 'As against a *bona fide* purchaser for value without notice, no relief can be had in equity.'   Almost the same words are used in Pomeroy on Equity, sec. 776.   But the case of *Carter* v. *Allen*, 21 Gratt., and on this point it is cited with approval in *Rorer Iron Co.* v. *Trout, supra*, is directly in point.   ' The doctrine that the Courts of Equity will not grant relief against *bona fide* purchasers without notice has always been adhered to as an indispensable muniment of title.   It is wholly immaterial of what nature the equity is, whether it is founded on a lien or encumbrance, or trust, or a fraud, or any other claim; for a *bona fide* purchaser of the estate for a valuable consideration without notice purges away the equity from the estate, in the hands of all persons who may derive title under it, with the exception of the original party whose conscience stands bound by the violation of his trust, and meditated fraud.'   In *Rorer Iron Co* v. *Trout, supra*, the same broad doctrine is laid down: ' It cannot be questioned at this day that the purchaser for value without notice, actual or constructive, will not be affected by a latent equity whether by lien, encumbrance, or trust, or fraud, or any other claim.' ·

" Second.  A deed made by a man to his intended wife followed by marriage is conclusively presumed to be in consider-

ation of marriage, and is based on a valuable consideration. In *Sterry* v. *Arden*, 1 Johns. Ch. 271, Chancellor Kent says: ' The marriage was a valuable consideration which fixed the interest in the grantee against all the world, and as much as if she had paid an adequate consideration pecuniary. It has been a principle of long standing, and uniformly recognized, that a deed voluntary or fraudulent in its creation, and voidable by a purchaser, may become good by matter *ex post facto*. It is the constant language of the books and of the courts, that a voluntary deed is made good by subsequent marriage, and marriage has always been held to be the highest consideration in law.' He cites for this Coke on Littleton. This citation is quoted with approval by the court in *Huston* v. *Cantril*, 11 Leigh 136, and in *Herring* v. *Wickham*, 29 Gratt. 628. In the last named case, which is an exceedingly careful discussion of the matter by Judge Staples, Justice Story is quoted with approval as follows: ' Marriage in contemplation of the law is not only a valuable consideration to support such a settlement, but a consideration of highest value, and, from motives of the soundest policy, is upheld with steady resolution. The husband and wife, parties to such a contract, are therefore deemed, in the highest sense, purchasers for a valuable consideration.'

" Judge Tucker, in *Huston* v. *Cantril, supra,* says : ' Marriage, from the earliest times, has been considered in law a valuable consideration.'

" Judge Baldwin, in *Welles* v. *Cole,* 6 Gratt. 645, says: ' Marriage furnishes a valuable consideration for an agreement, as much so as money paid, or agreed to be paid.'

" I might multiply indefinitely citations to show that a voluntary deed before marriage, upon marriage becomes a deed for valuable consideration, for the citations above made are from cases of this character. Such undoubtedly is the law, unless the Code has changed it. Judge Burks, in his review of the changes made by the Code, assigns as a reason for the change made by sec. 2459, that it was intended to defeat frauds

perpetrated upon existing creditors by the marriage of an insolvent debtor, accompanied by gifts to his wife. *Herring* v. *Wickham*, 29 Gratt. 628, and *Coutts* v. *Greenhow*, 2 Munf. 363, furnish instances of gross injustice to existing creditors. In these cases the man cohabiting with a woman for years in concubinage, becoming involved, conveyed to her all his property, and then married her. Marriage in such extreme instances furnished the valuable consideration, and the settlements were maintained, and just creditors defeated. Actually a man was allowed to do for his concubine what he could not do had she been his lawful wife. In the transformation of the character of the relationship, she carried his property beyond the reach of just obligations. It was to correct any repetitions of such an evil that the change was made. This object is plainly expressed in the wording of the law. The statute does not declare that such conveyances are voluntary. It simply declares that conveyances upon consideration of marriage are void as to existing creditors. Complainants present no claim as creditors, they claim, not as subsequent purchasers, but as paramount purchasers under the will of Israel Allen. The statute does not seem to make reference to this class of rights, and I believe the doctrine applies, that the law will not be considered changed by statute beyond the modifications of the statute. It is not necessary to refer to the testimony in relation to the consideration of this deed. The law imports that the consideration was marriage, and the parol testimony is but confirmatory of what the law, unaided by testimony, presumes. I believe the conclusion, then, is inevitable, that Mrs. Snyder is a purchaser for value.

" Third. The burden is now on the complainants to show that she is a purchaser with notice. This notice may be actual or constructive. It is not pretended by the complainants that they, or anybody else, told this purchaser for value of the equity, although some of them seem to have known of the deed of April 7, prior to the marriage cere-

mony. It is urged that the confidential relations between the grantor and grantee in the deed of April 7, will imply that the grantee received notice. This confidential relation was not held sufficient in *Herring* v. *Wickham, supra,* when a great wrong was perpetrated on creditors. The deed itself imports that Joseph Snyder did not know of, or recognize, the equities of complainants. Why should we suppose that he conveyed a title to Flora Grandstaff, telling her that he had no such title to convey? Nor is anything to be inferred from the fact that she was in the habit of passing by the several tracts of land. What more natural than to suppose that she drew the natural inference that the parties were in possession under their deeds? This is all the evidence to show actual notice. As to constructive notice, the principal point urged in argument was the existence of a preliminary contract, of date —— April, 1895, which should have apprised Mrs. Snyder that the deed of 20th of July, 1895, was made under mistake. There is no evidence to show that Mrs. Snyder knew of this contract. If, by reading the deed of 20th July, 1895, she could gather there was a contract of such date or character in existence, it is more than I have been able to do, after careful study. But suppose that she did know of it, that every provision in it was known to her, this does not prove that she did know the deed did not express the final and true agreement between the parties. On the contrary, she would have a right to presume that the purposes of the parties were altered, if there was conflict between the agreement and deed. In *Donaldson* v. *Levine,* 93 Va. 472, the court says: 'The burden is throughout on the complainant who must rebut the presumption that the writing speaks the final agreement, by the clearest and most satisfactory evidence. It must not only appear that the parties entertained a different intention in the first instance, but that it was not changed at or before the execution of the instrument; for otherwise the legal and natural inference is, it was laid aside for that expressed in the writing.' Why should any

one be required to look behind the recorded title, and run down the preliminary contracts to discover that the parties to a solemn deed have made a mistake? In the first recital of the deed, reference is made to the third clause of the will, and the parties declare that under said clause they are entitled to the whole estate. This is a mistaken construction of that clause, but so far from showing that the parties intended to convey only a limited estate, it goes strongly to show that it was their intention to convey the whole estate. Why recite they were entitled to the whole, if they intended to convey only a part, and do not then use restrictive words? It is a principle, too, that purchasers for value have a right to rely on the affirmations of grantors, and grantors are bound by their affirmations of title. See *Reynolds* v. *Cook*, 83 Va. 817; *Nye* v. *Lovitt*, 92 Va. 710.

"I have come to the conclusion that there was nothing on the face of the deed from which Mrs. Snyder could have inferred that the parties thereto had made a mistake. She stands as a purchaser for value and without notice, and has a right to such title as the deed of 20th July, 1895, conveys. This renders wholly unnecessary any consideration of the evidence as to whether a mistake in fact was made, or whether it was such a mistake as equity would correct. It is certain that the parties cannot be restored to the *status quo* of 20th July, 1895. The right of survivorship in the lands of the complainants held by Joseph V. Snyder on that day, and which, it is claimed, he surrendered to them in consideration of their surrender to him, was worth at least as much as the rights they surrendered to him. It is not shown there was anything unreasonable in the exchange. To-day, by the providence of God, his right is worth nothing. Theirs, they claim, is worth this $10,000 farm. Contingencies have become events. A reformation is a revision now. The altered conditions are not favorable for the interposition of equity to say the least. There seems to have been no haste about the deed. Five persons signed it. Three

on its date acknowledged it in Shenandoah; two on the 1st of August, in the county of Page, and it was not recorded until 2d October.

" Having reached the conclusion that each party is entitled to stand upon the deed as written, I am in exceeding doubt if the province of the Court of Equity is not exhausted. The construction of the muniments of title, whether the same be deed or will, furnishes no ground of equitable jurisdiction. Courts of law construe deeds or wills involving legal rights. Where there are mutual rights under the same instrument, whether deed or will, in the same property, courts of equity often have jurisdiction to define and partition, or otherwise divide, but where one holds adversely to the instrument, under which another claims, there is no jurisdiction in equity, whether the instrument is a deed or will, as a general rule. Certainly not for the mere purpose of construing the deed or will. If such were the case, all a party would have to do in any case would be to file his muniments of title with his bill, aver some one holds adversely, and pray the court to say if he was not entitled. The action of ejectment would soon become obsolete. In this case I have proceeded on the theory that a purchaser for value without notice is protected against any equity that may exist. This is a matter of defence. Again, in certain contingencies, this widow may be entitled to dower. It has been decided in Virginia that widows are endowable in defeasible fees of this character, even where the husband died without issue. *Hughes* v. *Jones*, 27 Gratt. 560, and *Medley* v. *Medley*, 27 Gratt. 568. If the deed of 20th July should be held not to pass the right of survivorship, and should the deed of 7th April, under secs. 2270 and 2271, be held no bar to dower, the widow in this case would be entitled to dower. After a good deal of hesitation I think the court should proceed to a final determination of the rights of parties.

" There are some cases which hold that a partition deed is not to be so strictly construed as other deeds. This was de-

cided prior to our Code, under the law which then seemed to exist, that partition between co-parceners and co-tenants might be by parol. No deed being necessary, the title vested, not by operation of the deed of partition, but by virtue of the original grant. The Code made a deed necessary, and the reason no longer exists. But, however this deed is viewed, it unmistakably conveys unto Joseph V. Snyder, his heirs, and assigns, all of the right, title, and interest of the parties of the first part. It precedes this sweeping granting clause by a declaration that it is the intention of the parties to vest exclusive title to the tracts of land in the grantee, and throughout the deed it wholly discards any right of survivorship in the grantors. There is no ambiguity about the word ' all '; a conveyance of ' all ' is not a reservation of ' part.' Suppose any one examined this deed for the purpose of lending money on it, would he not have been justified in believing that the grantors no longer retained any interest in the property? The widow, as we have seen, stands in this position. I am of the opinion that the title of survivorship did pass under this deed to Joseph V. Snyder, and that by his deed to Flora Grandstaff the same became invested in her.

"I think the court should refuse relief to parties careless enough to blunder, who received at the time full value for their blunder, who have everything to gain and nothing to lose by its correction now, as against one who dealt for a valuable consideration on the faith of their recorded deed."

Upon a careful examination of the record, we find that our views of this case are fully and clearly expressed in the opinion of Judge Thomas W. Harrison, which this court adopts; and, for the reasons therein given, we are of opinion that there is no error in the decree complained of, and it is therefore affirmed.

*Affirmed.*