## Staunton.

Solenberger and Others v. Strickler's Administrator.

September 21, 1909.

Absent, Cardwell, J.

1. Appeal and Error—*Award After Final Decree—Pleading—Reference in Brief.*—An award made under a submission subsequent to a final decree in a cause cannot be relied upon in this count when introduced for the first time in the form of a "reply brief."

2. Equity Jurisdiction—*Fraudulent Conveyances.*—A court of equity has jurisdiction of a bill by a creditor to clear away conveyances made by a husband, with the active participation of his wife, in order to hinder, delay and defraud his creditors.

3. Contracts—*Maturity—Right to Sue—Promise to Pay After Another Debt is Paid—Fraud.*—A promise to pay a debt when a certain other specified debt is paid is a promise to pay when the specified debt ought to have been paid, or at its maturity. The debtor has no right to postpone the fulfillment of his obligation by refusing and neglecting to pay the specified debt. Such a refusal, while possessing ample ability to pay, is a fraud on the rights of his creditors.

4. Equity—*Mistake—Evidence Required—Negligence.*—Equity will not relieve against a mistake unless the mistake is established by the clearest and most satisfactory evidence. It is not sufficient to show a possibility or even a probability of a mistake. Furthermore, the party complaining must have exercised reasonable diligence in discovering the mistake. If he had within his reach the means of ascertaining the true state of facts, and, without being induced by the other party, neglected to avail himself of his opportunities of information, relief will not be granted.

Appeal from a decree of the Circuit Court of Frederick county. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Ward & Larrick,* for the appellants.

*W. Roy Stephenson,* for the appellee.

KEITH, P., delivered the opinion of the court.

Before proceeding to discuss the questions arising upon this appeal it will be proper to say a word with respect to a paper filed at this term, on September 8, endorsed "Reply Brief of Ward & Larrick, Counsel for Appellant," which upon examination appears to be a transcript of proceedings upon a submission to arbitration of certain matters of difference between the administrator of A. H. Horner, deceased, and Barbara A. Solenberger and N. W. Solenberger, her trustee, together with the award of the arbitrators.

The decree appealed from was rendered on the 25th of June, 1908, the appeal was awarded some time in August of that year, while the submission to arbitration referred to was made on the 11th of November, 1908, and the award itself bears date on the 21st of November of that year. It appears, therefore, that it cannot, with propriety be taken into consideration by us.

Strickler's administrator filed a bill in the circuit court of Frederick county, making N. W. Solenberger and Barbara Solenberger, his wife, parties defendant, and asking that the defendants be compelled to pay to the complainant a debt of $3,600, evidenced by three notes for $1,200 each, dated October 1, 1903, and payable twelve months after date.

The defendants demurred to this bill upon four grounds, two of which were withdrawn in open court and need not be considered. The remaining grounds of demurrer are as follows: That the complainant's remedy is at law and not in equity; that the bill upon its face shows that the three notes signed by N. W. Solenberger, and to recover which suit is brought, were not payable until certain other debts therein set forth were paid, and that said other debts referred to appear from the averments of

said bill not to have been paid at the institution of this suit, nor at the time of the filing of this demurrer.

The bill discloses in much detail a long-conceived, well-contrived and carefully executed scheme upon the part of N. W. Solenberger, the husband, with the consent and connivance of his wife, to place the title to property of great value in his name as trustee for her benefit, and thus shield it from the just demands of his creditors.

There can be no doubt that a court of equity has jurisdiction of a bill filed by a creditor in order to clear away conveyances made by a husband, with the active participation of his wife, in order to hinder, delay and defraud his creditors.

The bill further alleges that the property held by the wife is her equitable separate estate, charged with her debts, which a court of equity has jurisdiction to enforce, and that view was maintained by the learned judge of the circuit court.

Without passing upon this view of the subject, we are of opinion that what we have stated sufficiently disposes of this ground of demurrer.

The determination of the second ground of demurrer rests upon the construction to be placed upon a writing under seal, signed by N. W. Solenberger and B. A. Solenberger, his wife, which is as follows:

"Winchester, Va., October 1, 1903.

"This paper is to show that N. W. Solenberger has given his three notes, dated October 1, 1903, to J. P. Strickler that are to be paid as soon as the debts now against the estate of N. W. and B. A. Solenberger are paid, and it is agreed by the undersigned that the notes given to the said J. P. Strickler are to be paid by the said N. W. Solenberger and Barbary, his wife, as soon as the notes now in bank and secured by a deed of trust on the said estate are paid, and to the above we put our names and seal.

(Signed) "N. W. SOLENBERGER.    [Seal.]
"B. A. SOLENBERGER.    [Seal.]"

The contention of appellants is that as the notes now in bank and secured by deed of trust have not been paid, the obligation of B. A. Solenberger as surety for the three notes in suit is not yet due according to the terms of her undertaking.

All the questions arising in this cause are dealt with in a manner so satisfactory by the opinion of the circuit judge that we cannot do better than to adopt it, with certain immaterial changes, as the opinion of this court.

"The obligation of Mrs. Solenberger sued upon is a promise, under seal, to pay three notes of Noah Solenberger, payable one year after date, for twelve hundred dollars each, which she agrees to pay as soon as certain specified debts are paid. These specified debts were debts on which she was bound, either as principal or surety.

"I do not believe that under this contract she has any right indefinitely to postpone her fulfillment of it by refusing and neglecting to pay the specified debts. The obligation was a renewal of contracts of similar import running back for many years, and, I think, the date fixed for the maturity of the notes may be fairly taken as the period contemplated between the parties within which she was to collect her resources and discharge her obligations. The enumerated debts were either due or renewals for short terms in bank, so no difficulty faced her to force payment if so desired by her.

"But independent of this the evidence clearly establishes not an inability to pay but a purpose not to pay. She was the possessor of large landed property, with an income in excess of her reasonable and natural personal requirements. Since 1904 she has mortgaged her property, either to lend $5,000.00 to her son, or to engage in some speculative venture, it is not material which. She has had in one or more years, according to her own statement, returns from real estate sufficient easily to have liquidated her debt. The evidence shows, however, that she has chosen to employ her income and resources otherwise. She has chosen to assume new obligations, instead of paying old ones.

A court will consider the specified debts as paid, according to this contract, when they ought to have been paid. I consider, therefore, the debt to plaintiff due and enforceable in a court of equity.

"With respect to the credit of $1,500 claimed by appellants: I hardly think it is necessary to do more than state the facts. Beginning with 1868 and continuing until 1883, when J. P. Strickler left Winchester to make his permanent home in Kansas, Solenberger and Strickler had many business connections. He was his partner in the lime business, and he became indebted to the firm of Wall & Co., both individually and also jointly with Wall. He also had some joint dealings with Strickler in real estate. Strickler returned from Kansas in 1888 for the express purpose of having a settlement with Solenberger. A settlement was had between them, and Solenberger executed his notes for a balance then found. I think it exceedingly doubtful whether the joint indebtedness of Wall and Solenberger entered into these notes, for it seems to me improbable that Strickler would take the note of an insolvent man, which was due to him from him and Wall, who was perfectly solvent; but I do not consider that this is material.

"In 1891 Strickler again returned from Kansas for the special purpose of settling those matters, and on this visit Solenberger and Strickler had another settlement. As a result, Mrs. Solenberger conveyed certain lots to Strickler, for which in the deed the consideration is named at $1,500. She gave to Strickler her first guaranty contract, which according to the evidence is a counterpart of the one sued on. Solenberger either executed new notes or specifically recognized the full liability on old ones. He testified he gave new ones, but his counsel insists he recognized old ones, and I don't consider this material. Strickler released Wall from his joint liability with Solenberger, and in the release produced by defendant states that he has been paid by Solenberger by the transfer of said lots. It is here claimed that Strickler and Solenberger forgot about the transfer of the

lots, and that Strickler did not give credit for them, and Solenberger did not claim credit for them. A mutual mistake in a prominent feature of the settlement then had is almost inconceivable.

"In 1899, Strickler again returned to settle with Solenberger, and another settlement was had. Either new notes were given, as Solenberger testifies, or, as seems probable, if probability is substituted for testimony, he recognized the amount due on the old. Mrs. Solenberger re-executed her contract of guaranty. Again by mutual mistake, it is claimed, both parties forgot the credit of $1,500. If it was remarkable that this credit should have been forgotten at the very first time it was made, and on the very occasion on which Mrs. Solenberger was, for the first time, called upon to guarantee the notes of her husband, it is more remarkable that at some time in the intervening years it had not occurred to the mind of one or the other party concerned. Again in 1903 Strickler returned for the purpose of making a settlement with Solenberger, and again a settlement was made, which resulted in the execution of the papers sued on. At that time Strickler gave Solenberger a receipt for $300, which is produced by defendants, and which states that it is 'everything received to date and applied to note.' New notes are executed, the notes filed with the bill; a new guaranty contract executed by Mrs. Solenberger, in which the notes she guaranteed are accurately described. Again it is claimed the parties forgot so important an item as the $1,500 credit, although in the intervening years the lots are sold by Strickler and eventually repurchased by Mrs. Solenberger, and perhaps resold by her. She actually produces a paper which was the calculation she says Strickler made in 1903, and gave to her, showing how he arrived at the amount then due.

"Both defendants testify to the business accuracy and integrity of Joseph P. Strickler. Not the slightest imputation as to unfair dealing on his part is made in the pleadings, and the evidence expressly repudiates such an idea. Strickler returns

to Kansas and shortly before the institution of this suit dies there. His administrator brings this suit, and in their answer the defendants formally admit the accuracy of the settlements had by which the amount of the notes was fixed.

"The testimony by which the mutual mistake is sought to be proved is N. W. Solenberger's deposition, who, in his answer to 113th cross-question, states he had never discovered it until his attorneys called his attention to the discrepancy. He cannot give the items which entered into the settlement. He again and again reiterates that he does not know whether his individual liability to the firm of Wall & Co. was an item or not. All that he pretends to swear to is that he did not owe Strickler anything but his share of the amount owed by Wall and himself, and perhaps, but he thinks not, the individual debt which he owed Wall & Co. We are left to conjecture, to grope in the dark, as to the settlement of 1888, and to similarity of figures and results, first, to furnish the items of a settlement, and, second, to show a mutual mistake.

"It is not sufficient to show a possibility or even a probability of mistake. It must be shown by the 'clearest and most satisfactory' evidence. *Foster* v. *Rison,* 17 Gratt. 340; *Neff* v. *Wooding,* 83 Va. 432, 2 S. E. 731; *Persinger* v. *Chapman,* 93 Va. 349, 25 S. E. 5; *Donaldson* v. *Levine,* 93 Va. 472, 25 S. E. 541; *Snyder* v. *Grandstaff,* 96 Va. 480, 31 S. E. 647, 70 Am. St. Rep. 863.

"In *Persinger* v. *Chapman, supra,* a bond was given in settlement, and it was claimed a mutual mistake was made. The court says, what also very aptly applies to this case: 'Equity will not extend its aid to one who has been guilty of culpable negligence. It requires that the party who asks relief on the ground of mutual mistake shall have exercised at least the degree of diligence which may fairly be expected from a reasonable person, and it has frequently been decided that equity will not relieve against mistake when the party complaining had

within his reach the means of ascertaining the true state of facts, and without being induced thereto by the other party neglected to avail himself of his opportunities of information.'

"If Solenberger's ideas are correct, in 1891, prior to the conveyance of these lots at $1,500, he owed Strickler, principal and interest, about $2,000, his share of the Wall joint debt. If his counsel is correct, he owed him about $400 or $500 more, being one-half of Solenberger's individual debt to Wall & Co., and this court is asked to tax its credulity to believe that in virtually contemporaneous arrangements, Solenberger obtained from his wife a deed for these lots as a credit of $1,500 on this $2,400 debt, then both parties, consisting of three persons, immediately forgot all about it, and Solenberger gave his notes or recognized the full balance due on notes already given for the whole $2,400, and obtained from his wife her guarantee of them; and then followed this up by three distinct and separate and solemn and formal recognitions of the correctness of the settlement then made, with intervals of years between each for scrutiny and reflection.

"It is easier for the court to believe that Solenberger has, after the lapse of twenty odd years, forgotten $1,500.00 he then owed Strickler, than that under such circumstances he then forgot $1,500 due to himself. There is every reason to believe, if Strickler were now alive, any obscurity, if any now exists, could be made perfectly plain.

"But whatever the true state of facts may be, judged by this record Solenberger has not measured up to the proof the law demands in such cases. More culpable negligence, with every fact fully known to him, if his contention be true, it would be difficult to imagine. Courts enforce relief in such cases only for those who keep their eyes open and senses alert, and not for sleepers. The decree should establish the debt of plaintiff, as claimed, and enforce the same according to the procedure of sequestration." .

For the foregoing reasons, the decree appealed from must be affirmed, but without prejudice to the right of appellee to apply for any relief against the persons or property of appellants warranted by the averments and proof of his bill that may be necessary for the full protection of his rights.

*Affirmed.*