## Wytheville.

### WELLS V. LAGORIO AND OTHERS.

#### June 8, 1911.

1. BOUNDARIES—*Description of Land—Deficiency in Quantity—Case in Judgment.*—The owner of a tract of land intending to sell the whole tract, and believing it to contain sixty acres, sold the western half thereof to one purchaser and the eastern half to another, describing each half as containing thirty acres. In each case the vendor pointed out to the purchaser the lines of the property sold, and they got the identical pieces of land that they purchased, bounded by the very lines which they had contemplated and which had been pointed out to them, but the acreage of each piece was seventeen and one-fourth acres, instead of thirty as was supposed. Subsequently it was ascertained that the vendor was mistaken, as to the location of his western boundary and that the true line was further west than he had supposed, and different from the line he had shown to the purchasers, and the area of the difference between the two lines was 14.2 acres. This area the purchasers claimed to have passed to them under their deeds.

*Held:* The 14.2 acres did not pass by the vendor's deeds, and is still his property. The purchasers got the exact lands they proposed to purchase, though of less acreage than was supposed, and it is not to be presumed that the vendor intended to sell that which he did not know that he owned.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for the complainants. Defendant Wells appeals.

*Reversed.*

The opinion states the case.

*A. T. Stroud* and *W. L. Williams,* for the appellant.

*Wm. W. Old & Son* and *M. W. Talbot,* for the appellees.

KEITH, P., delivered the opinion of the court.

The children and heirs at law of Augustine Lagorio filed their bill, in which they pray that a certain tract of land.

be partitioned among them and certain persons whom they name as defendants interested in the land as tenants in common. They also name A. B. Wells, from whom the land sought to be partitioned was derived, and T. B. Edwards, a coterminous land owner, as parties defendant. All of the defendants answered the bill, the co-tenants confessing its equity and expressing their willingness to have the land partitioned. Wells demurred to and answered the bill and claimed title in himself in fee to the land in the bill mentioned. Proofs were taken and the circuit court entered a decree in accordance with the prayer of the bill; and it appearing that partition could not be made in kind, appointed commissioners, who were directed to sell the land, so that its proceeds might be divided among those entitled. From this decree an appeal was taken by A. B. Wells.

The facts are as follows: Wells was the owner of a certain tract of land in the county of Norfolk, and by deed dated November 1, 1883, he sold to Claude Lord a portion of it, "the same being the westerly half of a tract of woodland said to contain sixty acres, lying on the north side of Sewell's Point road, and bounded on the west by the lands occupied by Jackson Denby, on the north by Talbot's land, and on the east by Phillips' land; the said lands being a part of lands deeded by Mrs. Martha Upshur and others, dated October 18th, 1882, to A. B. Wells and John C. Lord, the said land to be divided by a line starting at the center of the tract on the Sewell's Point road, thence running in a northerly direction to the center of the north line dividing the tract in halves, said westerly half sold to said Claude Lord said to contain thirty acres more or less." By deed dated September 25, 1886, Wells sold to Abram Beckett "All that tract of land lying and being in Tanners Creek District and county of Norfolk, State of Virginia, and bounded and described as follows, to-wit: on the west by lands owned by Claud Lord and on the north by one Talbot, and on the east

by lands of Phillips, and on the south by Sewell Point road, containing thirty acres more or less, being a part of the same that was conveyed to A. B. Wells and John C. Lord by deed bearing date on October 18, 1882, and duly of record in the clerk's office of Norfolk county court. The said John C. Lord having subsequently conveyed his interest to the said A. B. Wells."

The controversy in this case arises with respect to the location of the western line of the original tract owned by Wells, his deed to Claude Lord calling on the west for "lands occupied by Jackson Denby." That line is shown on the plat which accompanies this opinion as "B-"H."

The lands sold by Wells to Lagorio appear on this plat as "B"-"H"-"G"-"D"; the lands sold to Beckett as "D"-"G"-"F"-"E." At the date of these deeds the wife of Jackson

Denby held title to the triangle "A"-"I"-"J," but her husband seems to have extended his occupancy beyond the limits of her title, so as to embrace "A"-"I"-"H"-"B," which is the land in controversy.

Lagorio was put in possession of the western half of the tract owned by Wells, which was supposed to contain thirty acres, but which upon survey was ascertained to contain only seventeen and one-fourth acres. Some years thereafter the Denbys conveyed to a man by the name of Edwards, who upon investigating his title and having a survey of the premises made found that his line upon the east was "I"-"A" and not "H"-"B," as had been theretofore supposed. He disclaimed all interest in that quardilateral containing 14.2 acres, and so informed Wells, who thereupon made claim to it. The land is in a wild state, grown up in scrubby woods and bushes—practically in a state of nature.

The controversy in this case is as to the ownership of that quadrilateral of 14.2 acres, Lagorio and those interested with him claiming that the land purchased by him was bounded on the west by the land occupied by Jackson Denby, and that he was entitled by the terms of his deed to the line "I"-"A" as his western boundary, and that as he only bought one-half of the entire tract, that of course would throw his eastern line further to the west; and so with the tract sold to Beckett; so that each having purchased half of the original tract, the purchase of each would be increased by one-half of the 14.2 acres—at least that would be the logical result of their claims. Certainly, if all the facts had been known at the date of the deed from Wells to Lagorio, and he had sold one-half of the quadrilateral "A"-"I"-"F"-"E," the dividing line "G"-"D" on the plat would have fallen further to the west, and would have left in the half which Beckett afterwards bought 7.1 acres now embraced in the quadrialateral "B"-"H"-"G"-"D." They agreed among themselves, however, that instead of readjusting their rights in that way they would consider themselves

coparceners of the land in dispute, and that it be sold and the proceeds divided among them.

It appears from the evidence that the line "B"-"H" was shown to Lagorio and accepted by him as his western boundary at the date of his deed, and so the line "G"-"D" was the western boundary of Beckett. Lagorio and Beckett were both placed in possession of what they bought, or what they believed at the time of the transaction they were buying, and they and their assigns are still in the enjoyment of it. As the facts have since developed, it appears that the western line of Wells's original tract is further west than either he or his vendees at the time supposed. They were under the impression that his western line was "H"-"B"; it turns out now, in the light of subsequent developments that his western line was "I"-"A," and at the time of making the deeds to Lagorio and Beckett he was the actual owner, though ignorant of the fact.

As was said by the commissioner to whom the cause was referred, "It is true that Wells thought he was selling all of the land that he owned, but his possesions were greater than he knew, and it cannot be reasoned that he intended to sell that which he did not know that he owned. It is true that Wells thought he was selling thirty acres to each of the parties, Lord and Beckett, and they thought they were getting approximately that amount; and it is further true that they did not get approximately thirty acres apiece, but they did get a tract of land, the exact boundaries of which they knew, and had been pointed out to them. They got the identical piece of land that they purchased, bounded by the very lines which they had contemplated, and which had been pointed out to them—the exact lands they had proposed to purchase, although their lands contained less acreage than was supposed."

For the foregoing reasons we are of opinion that the decree of the circuit court should be reversed, and an order entered dismissing the bill of complaint.        *Reversed.*