# Staunton

## GILLESPIE AND OTHERS V. DAVIS AND OTHERS.

### September 7, 1914.

#### Absent, Buchanan, J.

1. APPEAL AND ERROR—*Rulings Not Prejudicial.*—Rulings on the pleadings made by the trial court at the instance of the appellant and in his favor, and not objected to by the appellee, will not be noticed on appeal.

2. REFORMATION—*Mistake—Burden of Proof—Degree of Evidence—Case in Judgment.*—Upon a bill filed to reform a deed so as to correct a mistake, the burden is upon the party alleging the mistake to establish the same by clear and convincing proof. It is not sufficient to show a possibility or even a probability of mistake. It must be shown by the clearest and most satisfactory evidence. The evidence in the case in judgment falls far short of this. The parties sold and bought a boundary of about fifteen hundred acres of land, and the unreformed deed covers more than that number of acres, and now after a lapse of half a century and a great appreciation in the value of the land, the grantees seek a reformation of a boundary line which will add four hundred and fifty acres additional to their tract.

3. POWER OF ATTORNEY—*Death—Revocation.*—A power of attorney to make a deed is revoked by the death of the maker before the deed is executed.

4. DEEDS—*What Passes—Ignorance of Ownership—Presumption.*—A grantor in a conveyance cannot be supposed to have intended to sell land that he did not know he owned.

5. EVIDENCE—*Admissions of Former Owner of Land.*—Declarations of the owner of land against his interest are admissible in evidence, not only against the declarant, but equally so against persons subsequently deriving title through or under such declarant.

6. REFORMATION—*Mistake—Laches.*—After a great lapse of time, the death of witnesses and appreciation in the value of the land, equity will not relieve against a mistake easily discoverable

at an early date from recorded deeds under which the complainant claims. When the party complaining had within his reach the means of ascertaining the true state of facts, and without being induced thereto by the other party, has neglected to avail himself of his opportunities of information for a great length of time, equity will not relieve against mistake. Indolent ignorance and indifference will no more avail to repel the imputation of laches than will voluntary ignorance of one's rights.

Appeal from a decree of the Circuit Court of Tazewell county. Decree for the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Henson & Bowen, J. W. Chapman* and *A. S. Higginbotham,* for the apellants.

*Geo. W. St. Clair* and *Finney & Stinson,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The bill in this case was filed by the appellants, J. S. Gillespie and others, to enjoin the trial of an action of ejectment pending in the Circuit Court of Buchanan county, and to have corrected an alleged mistake in a deed dated January 12, 1859, under which appellants claim title to the land in controversy. The prayer of the bill is that the deed under which appellees claim title to the land be vacated and annulled as a cloud upon appellant's title.

The answer of the appellees denies that any such mistake as is alleged in the bill was made in the deed of January 12, 1859, and avers that the only mistake made was in giving the wrong course from a certain lynn and

poplar to two spruce pines; and that if such course is corrected the appellants will have a complete deed to all the land they purchased.

The final decree from which this appeal has been taken by Gillespie and others dissolved the injunction which had been temporarily awarded them, and held that no such mistake, in surveying the land or in drafting the deed of January 12, 1859, had been made as that alleged in the bill, and that the only mistake made in the deed was, as claimed by the appellees, that the wrong course was given to the line running from the lynn and poplar to the two spruce pines, which mistake was corrected by the decree appealed from.

In the petition for appeal appellants review the action of the circuit court on the plea to the jurisdiction of the court, and its ruling on appellees' demurrer to the bill. The rulings of the circuit court on these points were at the instance of and in favor of the appellants. The appellees are not asking that these rulings be reversed— on the contrary, they insist that the decree appealed from is plainly right and should be affirmed. The decree of the lower court on the points mentioned will, therefore, not be further noticed.

The only question to be decided on this appeal is whether or not, as alleged in the bill, a mistake was made in surveying the land or in drafting the deed of January 12, 1859, under which appellants claim title to the land in controversy. The burden is upon those alleging the mistake to establish the same by clear and convincing proof. *Lea's Ex'or* v. *Eidson,* 9 Gratt. (50 Va.) 277; *Fudge* v. *Payne,* 86 Va. 303, 10 S. E. 7; *Donaldson and wife* v. *Devine,* 93 Va. 472, 25 S. E. 541; *Solenberger* v. *Strickler,* 110 Va. 273, 65 S. E. 566.

In *Fudge* v. *Payne, supra,* citing numerous authorities, it is said: "The authorities all require that parol evi-

dence of the mistake and of the alleged modifications must be most clear and convincing—in the language of some of the judges, 'the strongest possible'—or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, not even upon a mere preponderance of evidence, but only upon a certainty of error.''

And in *Solenberger* v. *Strickler, supra,* it is held that ''It is not sufficient to show a possibility or even a probability of mistake. It must be shown by the clearest and most satisfactory evidence.''

The record shows that many years ago George A. Warder and others were the owners of the Richard Smith grant of land, containing 10,000 acres, and that by deed dated January 12, 1859, they conveyed a portion thereof to T. S. Johnson and others. The portion conveyed by this deed to the Johnsons is described by metes and bounds as a tract of land lying in the county of Buchanan, on the waters of Dismal creek, containing about fifteen hundred acres, more or less, the consideration stated for the conveyance being $300. By deed dated February 16, 1887, B. E. Johnson and wife conveyed by general description this same land to Peter Poston as containing about 1500 acres, more or less, in consideration of $375. By deed dated March 14, 1887, Peter Poston conveyed the same land by general description as containing 1500 acres to Joseph Gillespie, the sale being by the acre and not in gross, at the rate of one dollar per acre, the grantor binding himself, if required, to have the land surveyed and to execute and deliver to Gillespie another deed conveying the land by metes and bounds. It is admitted that Joseph Gillespie, under this deed, was the holder of the legal title for the benefit of

himself and those uniting with him in this appeal. This tract of land was subsequently surveyed and found to contain 1572 acres and 92 poles, and was by deed dated November 25, 1887, reconveyed by Peter Poston to Joseph S. Gillespie as containing 1572 acres and 92 poles.

The present controversy arises out of the contention of appellants, that more than fifty years ago a mistake was made in the deed of January, 1859, from the Warders to the Johnsons and others, whereby they and their predecessors in title were conveyed 450 acres less land than was intended, and that such mistake should now be corrected so as to make their boundary embrace 2022 acres and 92 poles, instead of 1572 acres and 92 poles, the amount which was conveyed to them and their predecessors in title, and paid for by them as shown by the deed from their immediate grantor, Peter Poston, to Joseph S. Gillespie.

The allegations of the bill in reference to the alleged mistake show that the theory of appellants was that the distance of one line and the course of another had been omitted by the draftsman of the deed of January 12, 1859, and that they were entitled to have these courses and distances inserted in the deed, the effect of which would be to give them the 450 acres of land in controversy. After the cause was decided but before the final decree was entered, appellants were permitted to insert the following amendment in their bill: "That the mistake complained of in the said deed of 1859 from the Warders, by their agent, to T. S. Johnson, B. E. Johnson and others, was either made by the draftsman of the deed, or made by a suryevor, one Thomas W. Davis, who made a survey of the land in question after said land had been sold to George W. Johnson, and before said deed was executed to the devisees or heirs of said Johnson, the mistake arising from the fact that

when he reached the point at the poplar and lynn in question, he erroneously supposed that he had reached the north Warder line.''

This amendment, which was allowed over the protest of the appellees, would seem to indicate that appellants were not themselves certain about the alleged mistake, or how it occurred. It at least shows that after the evidence was all in they were unwilling to rest their case upon the allegation of the bill that the alleged mistake was the result of inadvertence of the draftsman in omitting from the deed certain courses and distances. The field notes of the surveyor were introduced in evidence by the appellees and from them it is quite clear that the draftsman of the deed made no mistake for the deed follows the field notes in describing the land. The only other allegation is that the surveyor made the alleged mistake.

One of the calls in the deed of January, 1859, is, "to a poplar and lynn on a hillside on the north line of the Warder survey, and with said line N. 23 degrees W. 570 poles to two spruce pines on the bank of Harry's branch near a lick on said Warder's line.'' The contention of the appellants is that, because the deed described the poplar and lynn call as on a hillside on the north line of the Warder survey, the seurveyor supposed when he reached the poplar and lynn that he had reached the north line of the Warder survey, but that this was a mistake; that he should have run in a direct line from the poplar and lynn to the north Warder line and thence with the north Warder line to the two spruce pines, instead of running the line, as he did do, directly from the poplar and lynn to the two spruce pines called for in the deed which were on the north Warder line.

There is nothing in this record to show what this ancient surveyor thought or supposed except his acts,

and they do not sustain appellants' theory with any certainty. If there is one thing expressed on the face of the deed under consideration more clearly and certainly than another, it is that the grantors were selling and the grantees were buying about fifteen hundred acres of land. This is declared on the face of the deed in explicit and unmistakable terms. If conjecture were permissible in such a case, it might readly be supposed that the surveyor thought he was meeting the demand of the call to the north line of the Warder survey by stopping at the marked monument established by the lynn and poplar, and running in a straight line from that point to the two spruce pines, another marked monument which was on the north line of the Warder survey. Especially is this a reasonable supposition when it is seen that by stopping at the lynn and poplar and running a line directly from that corner to the two spruce pines, the surveyor accomplished the important result of embracing within the survey about 1500 acres of land, that being the acreage called for as sold, not only in the deed of January, 1859, but clearly expressed as the amount conveyed in each of the subsequent alienations of the same land down to the deed, not before mentioned, dated December 20, 1888, from Gillespie and others to the Tazewell Coal and Iron Co.

In support of their contention that it was a mistake for the surveyor to stop at the lynn and poplar, appellants rely upon a paper known as a "title bond," dated June 13, 1857, which is executed by H. D. Aston, attorney in fact for B. A. Warder and George A. Warder, wherein it is contracted that certain lands shall be conveyed to George W. Johnson, who was the father of the grantees in the deed of January 12, 1859, and who died before that deed was executed. This paper is filed as evidence that the land therein contracted for and subsequently con-

veyed to the heirs of George W. Johnson was bounded on the north by Warders' back line.

It is not at all clear or certain that this "title bond" was a valid instrument. It purports to have been executed by H. D. Aston as attorney in fact, under a power of attorney dated May 12, 1851, which power was executed by Benj. H. Warder, Geo. A. Warder and Geo. V. Bacon, the persons then owning the land in controversy. Before the title bond, however, was executed, Geo. V. Bacon died, thereby, it would seem, revoking the power of the attorney in fact and leaving him without power to execute the title bond. *Huston* v. *Cantrill,* 11 Leigh (38 Va.) 136. Looking, however, to the title bond, it does not appear to materially, if at all, strengthen the contention of the appellants. The title bond provides that the land to be conveyed is to be bounded on the south and east by Thomas Brown's Whitt entry, on the north by Warders' back line and on the west by Harry's branch. The land conveyed meets this description, in that for a short distance on the west it is bounded by Harry's branch, for three or four calls on the south and east it is bounded by Thomas Brown's Whitt entry, but by no means all along the south and east; and on the north it is bounded by Warders' back line at the point called for as being at the two spruce pines. This description in the deed, while not of the entire distance, meets the description in the title bond on every side. It is quite clear from the surveys and deeds that it was never intended to convey the land in accordance with the construction now placed upon the title bond by the appellants, but that it was the intention of the Warders, by the deed of 1859, to convey to the Johnsons about 1500 acres of land situated on "Dismal creek," and this they did. If the construction now sought to be put upon this title bond by the appellants were sound, it would convey

to the Johnsons, in addition to the 1500 acres, not only the 450 acres now in dispute, but many acres more as to which no contention has ever been made by those claiming under the Johnsons.

If when the deed of January 12, 1859, was made, the Warders and Davis, the surveyor, thought that the line straight from the lynn and poplar to the spruce pines was the north line of the Warder survey, as might readily be inferred, it would not entitle appellants to the 450 acres of land lying beyond that line; it would merely show that the Warders owned more land than they thought, and they certainly cannot be supposed to have intended to sell land they did not know they owned. *Wells* v. *Lagorio,* 112 Va. 522, 71 S. E. 713.

It is shown in evidence that the construction put upon the deed of 1859 by the parties themselves was that the line from the lynn and poplar to the spruce pines was their back or north line. Declarations to this effect are shown to have been made by all of the grantors in the deed of 1859, and by Peter Poston their grantee. Those were admissions against the interest of the parties making them, and as such were admissible because the declarant probably knew the truth, and would naturally not make untrue admissions to the prejudice of his own title. Such admissions are admissible, not only against the declarant, but equally so against persons subsequently deriving title through or under such declarant. *Dooley* v. *Baynes,* 86 Va. 644, 648, 10 S. E. 974.

It has now been fifty-four years since the mistake sought to be corrected is alleged to have been made. All of the parties to these ancient transactions, the Warders, the Johnsons, Davis the surveyor, and those who assisted in making the survey, are dead. Throughout this long period repeated surveys of the land conveyed by the deed of January, 1859, have been made as the basis of

conveyances and in all of them the line from the lynn'
and poplar to the two spruce pines has been established
as the true boundary line of the land passing under the
deed of 1859. The various owners through whom the
title has passed have acquiesced in this fact without
question until the present claim was asserted by the ap-
pellants. No reason is assigned why the alleged mistake
was not discovered sooner, but it is not a violent pre-
sumption to conclude that the belated discovery was in-
spired by the fact shown of record that since appellants,
twenty-seven years ago, gave $1.00 per acre, these lands
have increased in value until they are now worth more
than forty dollars per acre.

"A marked appreciation or depreciation, according to
circumstances, in the value of property involved, when
the right might have been asserted before such change,
will prevent the granting of relief," 16 Cyc. p. 131.

In *Solenberger* v. *Strickler, supra,* it is said: "Equity
will not extend its aid to one who has been guilty of
culpable negligence. It requires that the party who
asks relief, on the ground of mutual mistake, shall have
exercised at least the degree of diligence which may fair-
ly be expected from a reasonable person, and it has fre-
quently been decided that equity will not relieve against
mistake, when the party complaining had within his
reach the means of ascertaining the true state of facts,
and without being induced thereto by the other party,
neglected to avail himself of his opportunities of infor-
mation."

In *Redford* v. *Clarke,* 100 Va. 115, 40 S. E. 630, it is
said: "One who would repel the imputation of laches on
the score of ignorance of his rights must be without fault
in remaining so long in ignorance of those rights. Indo-
lent ignorance and indifference will no more avail than
will voluntary ignorance of one's rights." See also

*Grove* v. *Lemley,* 114 Va. 202, 76 S. E. 305, and the still later case of *Hill* v. *Saunders,* 115 Va. 60, 78 S. E. 559.

It satisfactorily appears from the record that when the appellants made their purchase from Peter Poston, twenty-seven years ago, they had within their reach the same means of ascertaining the true state of facts concerning the location of the lynn and poplar with reference to the north line of the Warder survey that they have now—indeed, the mistake, if any, could have been established easier when they first became interested in the land than later. The deed of 1859 from the Warders to the Johnsons, as well as the deed from the latter to Poston, appellants' immediate grantor, were of record, and appellants repeatedly state in their petition for appeal that the mistake sought to be corrected is apparent on the face of the deed of January, 1859. If the alleged mistake is apparent on the face of that deed now it was necessarily obvious twenty-seven years ago, and attention to the matter at that time would have settled the present controversy.

Appellants claim that they had no knowledge of the fact that the north Warder line was a considerable distance north of the line between the lynn and poplar and the spruce pines. The deed from the appellants conveying this land to the Tazewell Coal and Iron Co., dated December 20, 1888, also expresses doubt as to the location of the lynn and poplar by saying that they were supposed to be on the Warder line. If the poplar and lynn were only *supposed* to be on the Warder line, and the appellants claimed title to the north Warder line, the doubt as to the true location of the corner designated by the lynn and poplar expressed in these deeds and especially that under which appellants took title, was alone sufficient to put them upon inquiry to ascertain if these marked trees were in fact on the Warder line instead

of something like a half mile therefrom. The fact is manifest from the record that at the time of their purchase appellants did not have the interest in the matter that the increased value of the Warder lands gives them now. They did not know where the Warder line was, nor did the Johnsons, nor did Peter Poston, but they all knew the location of the lynn and poplar and where the two spruce pines stood, and they knew, or could have known by going upon the ground, that the line between these two monuments, acquiesced in for more than fifty years as their boundary line, was designated by marked trees.

In conclusion, we are of opinion that the appellants have failed to sustain the allegations of their bill with the clearness and certainty that the law requires in such cases. The decree complained of is, therefore, without prejudice to their rights, and must be affirmed.

*Affirmed.*