MILLER *v.* McGINNIS.

1. FRAUD—MISREPRESENTATION AS TO LAW OF ANOTHER JURISDICTION —BAD FAITH.

Misrepresentation of the law of another jurisdiction must be made in bad faith in order to amount to actionable fraud.

2. SAME—MISREPRESENTATION AS TO LAW—BAD FAITH—EVIDENCE.

In action by sister, beneficiary named in life insurance policy, against insured's widow for alleged fraud in procuring a portion of the proceeds of the policy by means of misrepresentations as to law of place of residence of insured at time of death that defendant would have been entitled to at least a share of the proceeds where premiums were paid out of community property, bad faith of defendant in making such misrepresentation, if it was such, *held*, not shown under evidence presented.

3. COMPROMISE AND SETTLEMENT—FRAUD—GOOD FAITH.

Settlement reached between insured's sister and widow with respect to proceeds of insurance policy payable to former *held*, not to have been effected because of any misrepresentation as to a fact, made knowingly or recklessly, or that plaintiff sister acted in reliance upon it but was effected in compromise of a claim made in good faith by the defendant widow.

4. FRAUD—BURDEN OF PROOF—FIDUCIARIES—COERCION.

Plaintiff in action for alleged fraud in settlement of dispute as to right to any or all proceeds of insurance policy on life of her brother, the defendant's husband, *held*, not to have sustained burden of proving actionable fraud on the part of the defendant, there being no showing of reliance upon any of the alleged false representations, no confidential relation existing between the parties, no marked difference in ability or undue pressure or interference of any outside party.

5. COMPROMISE AND SETTLEMENT—MISTAKE—FRAUD—UNCONSCIONABLE ADVANTAGE.

Settlements of controversies between parties by way of compromise, without litigation, are favored, and will not be set aside by courts except on satisfactory evidence of mistake, fraud or unconscionable advantage.

6. SAME—FRAUD—EVIDENCE.

Record in action to recover amount defendant widow received from proceeds of life insurance policy in which plaintiff, insured's sister, was named as beneficiary *held,* not to justify nullification of settlement on ground of the alleged fraud.

7. ACCORD AND SATISFACTION — CONSIDERATION — COMPROMISE AND SETTLEMENT.

Plaintiff *held,* not entitled to recover in assumpsit on the theory of lack of consideration where she had entered into a valid settlement of dispute between herself and defendant that amounted to an accord and satisfaction.

Appeal from Bay; McCormick (James L.), J. Submitted April 7, 1938. (Docket No. 50, Calendar No. 39,685.) Decided June 6, 1938.

Action by Sadie Miller against Sarah McGinnis for sums allegedly wrongfully paid to defendant from the proceeds of a life insurance policy. Judgment for defendant. Plaintiff appeals. Affirmed.

*Otto J. Manary,* for plaintiff.

*Hubert J. Gaffney,* for defendant.

NORTH, J. Plaintiff seeks recovery of $3,600 paid to defendant from the proceeds of a life insurance policy in which plaintiff was named as the beneficiary, such payment having been made to defendant by reason of an assignment by plaintiff who alleges that the assignment was procured by fraud and without consideration. The circuit judge, who heard the case without a jury, held that this payment or assignment was an accord and satisfaction of a controversy between these parties, and further that plaintiff in making the assignment was not induced to do so by the alleged fraudulent representations. From a judgment for defendant, plaintiff has appealed.

Francis McGinnis, a resident of Spokane, Washington, at the time of his death (November 13, 1935) was carrying three life insurance policies in the Agricultural Life Insurance Company. He left practically no other estate. Sadie Miller, plaintiff herein, residing in Flint, Michigan, is a sister of deceased. Sarah McGinnis, defendant, is the widow of deceased, and since his death has become a resident of Bay City, Michigan. The widow received the proceeds of two of the life insurance policies which, after deducting policy loans, amounted to four or five thousand dollars. The third policy carried by Mr. McGinnis was for $10,000, but by reason of policy loans being deducted the actual amount paid thereon was somewhat in excess of $8,000. This $10,000 policy was payable to plaintiff; but all of the premiums had been paid by Mr. McGinnis. It was found among his papers after his death and was delivered to the widow. Through inquiries made at the Detroit office of the insurance company plaintiff evidently learned more of the details of this insurance and from this source ascertained that the policy was in the possession of defendant. She was advised that the insurance company required a surrender of the policy as a condition of its payment. About two months after the death of Mr. McGinnis plaintiff went from her home in Flint to Bay City, where defendant was then residing and an interview occurred between them concerning the insurance. Plaintiff claims that her purpose in going to Bay City was to obtain possession of the policy from defendant; but defendant asserts that plaintiff also brought up the matter of compromising their respective claims to the proceeds of this policy, while plaintiff says defendant first suggested a settlement. In any event, the re-

sult of a short interview between the parties was that they would adjust the matter between themselves and thus save the expense of any litigation, but the terms of the adjustment were not at that time agreed upon. However, plaintiff was then told by defendant that she would wire to her attorney in Spokane, Washington, in whose possession she had placed the policy, and have him forward the policy at once. Apparently plaintiff's visit to defendant in Bay City was on the evening of Tuesday, January 14, 1936. She returned to her home in Flint that same evening. The next day defendant accompanied by her son-in-law, who was an insurance man, and also by an attorney, drove to the home of plaintiff in Flint. There a further conference occurred between plaintiff and defendant in a room apart from any other persons, and these two sisters-in-law agreed upon the terms of their settlement. Defendant had taken the position that the proceeds of this policy should be divided equally between them; but plaintiff complained that she was in need of money and had unpaid taxes in the amount of $500. Thereupon defendant agreed to allow the $500 to cover the tax item and that the balance of the insurance money should be divided substantially equally. Defendant's son-in-law was called upon to work out the mathematical aspect of their settlement, and then they agreed plaintiff would assign to defendant an interest in the proceeds of the policy to the extent of $3,600, the balance to be paid to plaintiff. Thereupon the attorney, with the assistance of plaintiff's daughter who was a stenographer, prepared the following memorandum of the transaction:

"For a valuable consideration, I, Sadie Miller, do hereby transfer, assign, set over and sell unto Sarah

J. McGinnis, all of my right, title and interest in and to the sum of three thousand six hundred dollars ($3,600) from the proceeds of a certain insurance policy No. 18759 of the Agricultural Life Insurance Company of America, issued on the life of Francis F. McGinnis, in which I am the beneficiary, to be absolutely hers forever.

"Sadie Miller."

Pursuant to arrangements subsequently made between these litigants, plaintiff went to Bay City the following Friday evening, stayed overnight at the home of defendant, and the next morning the two went to the Bay City office of the insurance company and plaintiff, to whom defendant had given the policy, surrendered it to the insurance company which issued its check payable to both of these litigants for the amount due on the policy. They thereupon went to a bank, cashed the check, $3,600 of the proceeds were taken by defendant and the balance ($4,659.35) by plaintiff.

About five months after the above transaction plaintiff instituted this suit by which she seeks to recover the $3,600 received by defendant from the proceeds of the insurance policy. Plaintiff's declaration alleges a right of recovery both on the ground of fraud and in assumpsit. We quote the fraud charged in the declaration:

"That to induce your plaintiff to give up to defendant a $3,600 interest in said policy, the said defendant represented to the plaintiff that the law was that a policy for a man's sister in a larger sum than was left for the widow would be totally void and uncollectible. That where a man paid the premium on a life insurance policy, he must under the law name as beneficiary in that policy someone in his immediate family, and that a sister was abso-

lutely excluded under the law. That if plaintiff went to court to attempt to collect her insurance policy, it would be declared null and void and no one would receive any benefit from said policy, but that if plaintiff would give to defendant a part of that policy, it would make the policy legal and collectible."

At the trial of the case plaintiff was permitted to amend her declaration so as to charge as a further fraudulent representation that at the time plaintiff first visited defendant in Bay City plaintiff was informed by defendant that she had commenced a suit involving this insurance in Spokane, Washington.

Plaintiff claims that alleged fraudulent representations were made on the occasion of her first visit to defendant in Bay City. Plaintiff testified:

"We talked about my brother's death, and visited a while and I finally asked her for my policy, and she told me that she didn't have it, that it was in Spokane, Washington, in the hands of her lawyers, and they already had started a lawsuit and they were going to break the policy because a brother couldn't hold more insurance for his sister than he could for his wife."

Plaintiff further testified that at her home the following day in a talk between the two litigants defendant said:

" 'Well, you know that if you don't settle it this way you will have to go to Washington to contest it,' and I had no money or means to go out there. * * * And she said that the lawyers were getting half, * * * and so finally she agreed she would take $3,600. This was in the kitchen of my home in Flint, no one but Mrs. McGinnis and myself were present."

Appellee claims that she stated to plaintiff that she (defendant) "was going to have a lawsuit" in

Washington; and she also claims, as the record clearly shows, there was no deception or untruth in her representation that the policy was in the possession of her attorney in Spokane, Washington. While it was not literally true that a suit had actually been started, the record discloses that such was the purpose for which the policy was there and that her attorney had been giving the case consideration and had made some investigation and come to the conclusion that defendant had some rights in the proceeds of this policy, but he was met with difficulty in that he could not obtain service in the Washington jurisdiction upon the adverse parties. However, the case was not hopeless because at the time of the settlement between plaintiff and defendant the Washington attorney was still hopeful that in event a suit was started in Washington the insurance company might voluntarily enter its appearance. Either just before or just after these parties had agreed upon a settlement, defendant received a letter from her attorney located in Spokane; and we quote it in part because it is somewhat enlightening as to there having been an actual controversy:

"I had in mind bringing an action here against the insurance company, alleging the facts that the insurance company, by virtue of the insurance contract was indebted to your mother (this letter is also addressed to defendant's daughter) in the sum of the face amount of the policy less the loan which was against it, and I planned also to include Mrs. Sadie Miller as a party defendant. My thought being that we could invoke the construction of our court which has been placed upon insurance contracts where the premiums therefor have been paid from out of community funds without the consent or sanction of the other member of the community. Our court has gone a long way in holding that, though the husband is the

manager of the community, he cannot give away the community assets, and I find cases from other jurisdictions having the community property law of similar import, and have two cases which hold closely to our proposition.''

In appellant's brief attention is called to plaintiff's testimony to the effect that she was told by defendant ''that it was the law that a man could not carry more life insurance on his sister than he carried on his wife;'' and in this connection appellant, citing 12 R. C. L. p. 297, takes the position that reliance may be placed on a statement of the law of another State, and a misrepresentation thereof may constitute fraud. This contention must be viewed in the light of the finding of the circuit judge, which is sustained by the record, that in making the alleged misrepresentations, if any, the defendant was not prompted by a fraudulent intent. Regardless of whether appellant is correct in the contention that actionable fraud may result from a misrepresentation as to the law of another jurisdiction, we think it would be going entirely too far to hold that such a misrepresentation is actionable if not made in bad faith. In the instant case there is no showing of bad faith in this particular on the part of defendant.

We forego reviewing other details of the testimony; but from the record as a whole we find the circuit judge was correct in holding in substance that the defendant in good faith was asserting under the laws of the State of Washington, where she and her husband resided at the time of his death, a right to participate in this insurance fund; that while it was not literally true that a suit had been started in Washington, this did not give rise to a right on the part of plaintiff to recover on the ground of actionable fraud because it was true that steps had been

taken looking towards litigating this matter in the Washington courts and defendant in making the statement was not prompted by any fraudulent intent. In fact the record discloses that defendant did not understand in a technical sense when a suit is actually started. And in connection with this phase of the record, it strikes one as rather strange if in this particular plaintiff was really deceived and thereby defrauded, she or her counsel would neglect so to allege in the declaration as originally filed.

After pointing out several circumstances disclosed by the record which justified his conclusion, the trial judge in his opinion said:

"The court very much doubts that there was a material misrepresentation as to a fact; that she (defendant) made it knowing it was false, or made it recklessly without any knowledge of the truth; *or that plaintiff acted in reliance upon it.* The court does find that the settlement which is charged to have been brought about by fraud was a compromise in which there was the reality of a claim made and that a dispute existed between the parties as to the proceeds of all or a part of the insurance policy. It fails to find that the agreement was not entered into by the defendant in good faith. In such a case the courts will not disturb the settlement. 5 R. C. L. p. 876; 12 C. J. p. 336. It is the conclusion of the court that the plaintiff has failed to sustain the burden of proof that the settlement was reached through actionable fraud on the part of the defendant."

Our review of the record satisfies us that the trial judge reached the right result, particularly in that plaintiff has failed to establish the essential element of her case: *i. e.,* that she relied upon one or more of the alleged false representations in making the settlement with her sister-in-law. There is no show-

ing of a confidential relation existing between the parties, there was no marked difference in ability and if there was any the advantage seems to have been possessed by plaintiff, nor is there any showing of undue pressure or interference of any outside party. These two sisters-in-law had a real difference, seemingly each was honest in her claim. They consummated a settlement between themselves.

"Settlements of controversies between parties by way of compromise, without litigation, are favored, and will not be set aside by courts except on satisfactory evidence of mistake, fraud, or unconscionable advantage." *Loud* v. *Federal Ins. Co.,* 195 Mich. 60, 73.

We recently quoted the above with approval in *Scholz* v. *Boening,* 278 Mich. 76. The record does not justify nullification of this settlement on the ground of the alleged fraud. And since we find a valid settlement amounting to an accord and satisfaction, plaintiff cannot recover in assumpsit on the theory of lack of consideration.

The judgment entered in the circuit court is affirmed, with costs to appellee.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.