## GENERAL DISCOUNT CORPORATION v. SCHRAM.

## No. 1441.

District Court, E. D. Michigan, S. D.

Nov. 25, 1942.

Bratton & Bratton, of Detroit, Mich., for plaintiff.

Robt. S. Marx, Carl Runge, and Roy G. Holmes, all of Detroit, Mich., for defendant.

LEDERLE, District Judge.

1. The defendant, B. C. Schram, is the duly appointed, qualified and acting re-

ceiver of First National Bank-Detroit, an insolvent national banking association, engaged in winding up its affairs.

2. On February 11, 1933, the said bank, along with many others, closed its doors and never thereafter re-opened for normal business. On March 13, 1933, the Comptroller of the Currency appointed a Conservator for said bank, who continued until the Comptroller, having found and declared said bank to be insolvent, appointed a receiver therefor, and the affairs of said bank have been continuously since that time and are now being wound up by a receiver.

3. On May 16, 1933, the Comptroller duly levied a 100% assessment against the shareholders of said First National Bank-Detroit, and made the same payable to defendant receiver July 31, 1933.

4. At the time of closing of said bank, 120 shares of capital stock of Detroit Bankers Company, a Michigan holding corporation, stood in the name of Federal Discount Corporation, a Delaware corporation, represented by certificates numbered 074181-6 (both inclusive, for 20 shares each). Another 100 shares of said stock, represented by certificates numbered 74290-4 (both inclusive, for 20 shares each), stood in the name of Bernice Downs. These last mentioned 100 shares had been assigned to Bernice Downs, without her knowledge, acquiescence or consent, at the instance of her brother, Albert L. LeGro, three days before the banks closed. Of these 100 Downs' shares, 80 had been so transferred by Federal Discount Corporation, and these are the only shares involved herein.

5. (a) In 1936, defendant instituted suit in California against said Bernice Downs as registered owner of said 100 shares, and she pleaded as a special defense that she was not the owner, real or ostensible, that the certificates had been assigned to her name without her knowledge, consent or acquiescence, at the instance of her brother, that her first knowledge thereof was when the receiver notified her of assessment thereon, and that she therefore was not liable for a stockholder's assessment. This Downs' defense was substantiated by her brother, Albert L. LeGro, in negotiations with the bank receiver.

(b) Albert L. LeGro was adjudicated a bankrupt in this court on October 17, 1933, scheduling his obligation for assessment on these shares, as shareholder, listing the receiver of Detroit Bankers Company and the receiver of First National Bank-Detroit as creditors in connection therewith. He was discharged, as a no asset bankrupt, on June 4, 1934.

(c) During the summer of 1937 a settlement was negotiated between the bank receiver and Bernice Downs and Albert LeGro. The proposed settlement was approved by the Comptroller, and a court of record in this city authorized said receiver "to accept not less than $150 in cash, in consideration of said Receiver releasing Bernice Downs from assessment liability to said Receiver arising through her ownership of 100 shares of Detroit Bankers Company stock, being Receiver's asset No. SA–2091, and releasing Dr. Albert L. LeGro from any and all liability to said Receiver."

(d) This settlement was consummated, and in exchange for $150, defendant, on July 1, 1937, executed and delivered to Albert L. LeGro a release from any and all liability to said receiver on account of said 100 shares, and the California attorney for the receiver, on September 30, 1937, executed and delivered to Bernice Downs a receipt in full settlement, release and discharge of all liability on said 100 shares, and on November 16, 1937, the California suit was dismissed with prejudice.

6. (a) On October 26, 1937, defendant receiver instituted equity case No. 8227, in this court, against General Mortgage Corporation, a Michigan corporation, for assessment liability on the first mentioned block of 120 Federal Discount Corporation shares. The theory of such suit was that General Discount Corporation, which later changed its name to General Mortgage Corporation, was incorporated in Michigan on October 22, 1932, as part of a plan for consolidation of Federal Discount Corporation, a Delaware corporation, and Republic Finance and Investment Company, an Indiana corporation; that on November 30, 1932, General Mortgage Corporation acquired the assets of Federal Discount Corporation, and as a matter of law assumed its liabilities, including the stock and assessment liability on said 120 Federal Discount Corporation shares. (Plaintiff was subsequently incorporated as "General Discount Corporation.")

(b) The complaint in said case 8227 alleged that in the class suit of Barbour v. Thomas, D.C., 7 F.Supp. 271, affirmed 6 Cir., 86 F.2d 510, this court had adjudged that holders of capital stock of Detroit

Bankers Company were liable for the said assessment, and that their ownership of Detroit Bankers Company stock represented ownership of First National Bank-Detroit stock, by virtue of which said 120 shares of Detroit Bankers Company stock standing in the name of Federal Discount Corporation represented ownership of 16.-8669 shares of the capital stock of First National Bank-Detroit, and that the assessment against defendant therein would therefore amount to $14.055775 per share of Detroit Bankers Company stock, plus interest at 5% per annum from July 31, 1933, until paid.

(c) In answer thereto General Mortgage Corporation admitted taking over "certain assets" of Federal Discount Corporation, acquiring "by purchase some of the assets" and assuming "some of the liabilities of Federal Discount Corporation", but denied that it was legally liable for this debt of Federal Discount Corporation.

(d) As a further defense a judgment entered January 26, 1934, in favor of General Discount Corporation, as plaintiff, and against the said bank and its said receiver, as defendants, in accounting case number 12,994, this court, was pleaded as res adjudicata of all matters which might or could have been tried under the issues therein, including the assessment liability on said 120 shares.

7. In August, 1938, defendant receiver informally, but not by way of suit, claimed that said General Mortgage Corporation was liable under 12 U.S.C.A. § 64, as a sixty-day transferor of 80 of the shares transferred to Bernice Downs to the extent that the sixty-day transferee had failed to meet the stock assessment liability.

8. (a) The attorney for plaintiff arranged a settlement for 50% of the claimed liability on the 120 Federal Discount Corporation shares and on the 80 Bernice Downs shares. In pursuance thereof said receiver communicated with the Comptroller of the Currency, and in response received the Comptroller's authorization to consummate the settlement, such letter of authorization reading in part as follows:

"You also refer to SA-2091, representing an assessment upon 80 shares of the same stock, which was transferred to Bernice Downs by the corporation mentioned, Federal Discount Corporation, during the sixty day period prior to suspension, it appearing your claim against Mrs. Downs

has been compromised and a consideration of $120 received. It is your position that the Federal Discount Corporation is liable as transferor for the remaining amount due.

"You report that in 1932 the General Discount Corporation was formed in Michigan and acquired substantially all of the assets and liabilities of the Federal Discount Corporation, although a dispute has arisen as to whether or not the new corporation acquired title to the Detroit Bankers Company stock and assumed the liability thereon. The Federal Discount Corporation was dissolved on March 1, 1933, and in October 1937 you instituted suit against the General Mortgage Corporation, although it appears this corporation was dissolved in September 1937 and was succeeded by the General Discount Corporation. It is represented that the assets of the General Mortgage Corporation have been distributed among its shareholders and in addition to the serious legal questions involved, you refer to the fact that if the liability of the corporation were established it would be necessary to either trace the assets of the corporation or sue the scattered shareholders. Although the present corporation denies liability, you are offered in settlement of the two obligations 50% of the full amount due, including principal and interest to date, after making proper allowance for the amount received from Mrs. Downs. You state acceptance of this offer will permit you to collect approximately $1701.57, and inasmuch as it is the view of your counsel that the settlement should be made you so recommend.

"In view of the circumstances as set forth in your letter and in reliance upon your representations, you are authorized to petition the court for an order permitting you to accept the offer as outlined, provided proper consideration has been given to all claims of the debtor against this trust."

(b) Thereafter, on September 14, 1938, said receiver filed in this court a petition, asking authority to consummate this settlement. This petition read in part as follows:

"That the Federal Discount Corporation, a Delaware corporation, is indebted to your petitioner on the following assessment liability: Stock assessment number SA-2402, 120 shares, * * *; that this corporation is also liable as transferor of 80 shares Detroit Bankers Company stock dur-

ing the sixty day period prior to the closing of the First National Bank-Detroit; that the transferee liability with reference to this 80 shares of stock has been heretofore settled.

"That in the Fall of 1932 the General Discount Corporation was organized and acquired substantially all of the assets and liabilities of the Federal Discount Corporation and the Republic Finance & Investment Company; that the General Discount Corporation changed its corporate name to the General Mortgage Corporation; that the General Mortgage Corporation dissolved in September, 1937, the bulk of its assets being purchased by a new corporation known as the General Discount Corporation; that the remaining assets of the General Mortgage Corporation were distributed to its stockholders; that counsel representing the General Discount Corporation contend that the Detroit Bankers Company stock held by the Federal Discount Corporation was not included in the purchase of that corporation's assets by the General Discount Corporation in 1932; that your petitioner has been offered fifty percent of the assessment levied upon 120 shares Detroit Bankers Company stock standing in the name of the Federal Discount Corporation and the 80 shares of stock transferred prior to the closing of the First National Bank-Detroit, together with interest on said assessments, after allowing a credit of $120.00 paid in settlement of the transferee liability in full compromise settlement of said assessments; that your petitioner is of the opinion that in view of the legal difficulties involved this settlement is the best obtainable and should be accepted; that under this settlement your petitioner will receive approximately $1,701.57.

"That your petitioner has submitted all the facts and circumstances in connection with the proposals set out in this petition to the Comptroller of the Currency of the United States, who has approved same, subject to the order of this court, as will appear from a copy of a letter received from the Comptroller of the Currency and attached hereto."

(c) This petition was granted by an order of the Honorable Edward J. Moinet, of this court, entered September 14, 1938, which provided: "It is ordered that B. C. Schram, Receiver, be and he is hereby authorized to accept not less than 50% of the principal, together with accrued interest, of the assessment levied on 200 shares Detroit Bankers Company stock, being Receiver's Assets Nos. SA–2402 and SA–2091, and that in determining the amount due said Receiver shall allow as a credit $120.00 heretofore paid by one Bernice Downs as transferee of 80 shares of stock."

9. Thereafter, in October, 1938, the settlement was consummated by the attorney for General Mortgage Corporation handing to defendant at that time the check of General Discount Corporation for $1,711.83. This sum was comprised of an amount equal to 50% of the liability on the 120 Federal Discount Corporation shares, plus 50% of the liability on the 80 Downs' shares after deducting a credit of $120. The proportionate credit on the 80 shares here involved of the $150 payment on the 100 shares in the name of Bernice Downs is $120.

10. A year later this suit was instituted by plaintiff, as assignee of General Mortgage Corporation, claiming a payment made under mistake of fact in that at the time of paying the 50% of the claimed liability of Federal Discount Corporation, plaintiff had no knowledge of either the settlement of the alleged Downs' liability or the payment of $120 in connection with the 80 shares in her name, that had this been known to plaintiff the 50% settlement would not have been consummated, and plaintiff asks that the compromise be set aside to the extent that it covers liability on the Downs' shares, and that plaintiff be given judgment for $648.93, representing 50% of the balance of the assessment liability pertaining to said Downs' shares after credit of the $120 paid thereon by Downs and LeGro.

11. Plaintiff claims that the assessment liability on these 80 Downs' shares comprised one debt, that acceptance of a portion of the assessment from the transferee and real owner in settlement of their liability discharged the debt, that plaintiff thereafter settled and paid an alleged transferor's liability without knowledge of the prior settlement or payment, that this constituted a payment by plaintiff under a mistake of fact, from which the court should relieve it. The cases of mistake upon which plaintiff relies involve either mutual mistake or payments not in connection with compromises, and sometimes both these distinguishing features are present. Defendant contends that if there was a mistake it would not be of a material fact

because as a matter of law settlement of a transferee liability does not discharge a sixty-day transferor's statutory liability, both being primary and distinct liabilities, with each of which a receiver can deal independently without regard to or legal effect upon the other, subject only to the limitation that not more than the amount of one assessment can be collected from either or both sources. Throughout, this has been defendant's consistent and good faith contention, and it is not unreasonable. This legal issue does not appear to have been directly passed upon, although some general language in cases cited by defendant tends to support his contention. However, on the record here it does not seem necessary to resolve this legal controversy, because the settlement appears unimpeachable.

12. This controversy arises out of an executed compromise. There was, and still is, a bona fide and reasonable dispute as to facts and law. Both parties were represented by counsel. There is no claim of fraud, misstatement, intentional concealment or overreaching on the part of defendant. There was no mistake on defendant's part; hence, no mutual mistake of fact. Plaintiff knew the amount involved, or was in possession of figures from which the exact amount of assessment, plus interest, could be computed on the shares, as well as the percentage thereof to be paid in settlement. The compromise was not consummated for two months after claim was asserted on these Downs' shares. Apparently, the only documents used in connection with the compromise were the petition and order, which are legal prerequisites to validate compromises made by defendant, entered in this court about a month before settlement was consummated, which in detail related the facts of the Downs-LeGro prior settlement and payment, for which credit was allowed plaintiff under the terms of the plaintiff-defendant compromise. Plaintiff and its predecessors were business corporations. The transfer to Downs, through LeGro, was plaintiff's predecessor's business transaction. Albert LeGro is a local dentist. The amount paid by plaintiff was arrived at by allowing plaintiff a credit of $120 for this Downs-LeGro payment. There is no evidence of any inquiry regarding this apparently favorable discrepancy in figures under plaintiff's theory. Under all the circumstances, and in the absence of anything to the contrary, one in defendant's position would be reasonably justified in believing that plaintiff knew the details of the $120 credit allowed to it at the time plaintiff made the payment.

13. In view of my conclusion here and the fact that neither party has questioned the power of a court to set aside part of this compromise, nor the effect such action might have upon the remainder of the compromise, I have not considered it.

## Conclusions of Law

■ 1. This court has jurisdiction of this case as a controversy in connection with winding up the affairs of a national banking association. 28 U.S.C.A. § 41(16).

■ 2. Courts favor compromises of disputes, and where a settlement is once shown, every presumption is indulged in favor of its fairness, correctness and validity generally, and the burden of proving a basis for avoidance thereof is on the party seeking such avoidance. Kirl v. Zinner, 1936, 274 Mich. 331, 264 N.W. 391; Loud v. Federal Ins. Co., 1917, 195 Mich. 60, 161 N.W. 928, 168 N.W. 124; 15 C.J.S., Compromise and Settlement, § 51, p. 777.

■ 3. Settlement of an honestly and reasonably disputed claim is binding, even though it appears that if the parties had resorted to a court a different result might have been reached. Sec. 76(b), Restatement of Contracts; 12 Am.Juris., p. 577; 1 Williston on Contracts (Rev.Ed.), Sec. 135.

■ 4. A receiver of a national banking association can only compromise the individual liability of a shareholder of such association upon the terms approved by the Comptroller of the Currency and an order of a court of record of competent jurisdiction, as was the case here, and one compromising with a receiver is chargeable with notice thereof. 12 U.S.C.A. § 67.

■ 5. Where settlement of a controversy has been fairly reached and executed by parties dealing at arm's length, and there is no fraud, misstatement, intentional concealment, overreaching or mutual mistake, the fact that one party did not comprehend the significance of a fact disclosed to him or did not draw the proper inference therefrom, he having made no inquiry or request for explanation, does not constitute a mistake of fact justifying an avoidance of the compromise on the theory

that such party had another legal defense than those he had contended for, based on such uncomprehended fact. Lauzon v. Belleheumer, 1896, 108 Mich. 444, 66 N.W. 345; Brevoort v. Partridge, 1909, 156 Mich. 359, 120 N.W. 803; Miller v. Mc-Ginnis, 1938, 285 Mich. 28, 280 N.W. 96; Daly v. Busk Tunnel Ry. Co., 8 Cir., 1904, 129 F. 513; Holman v. Gulf Ref. Co., 5 Cir., 1935, 76 F.2d 94; Moran v. Copeman, 1935, 55 Idaho 785, 786, 47 P.2d 920; Multnomah County v. Dekum, 1908, 51 Or. 83, 93 P. 821, 16 Ann.Cas. 933; Shanahan v. Rochester German Ins. Co., 1914, 126 Minn. 373, 148 N.W. 269; Solenberger v. Strickler's Adm'r, 1909, 110 Va. 273, 65 S.E. 566.

█ 6. A judgment of no cause of action shall be entered in favor of defendant and against plaintiff, with costs to be taxed.